[No. D059833. Fourth Dist., Div. One. Feb. 28, 2013.]

GUIDEONE MUTUAL INSURANCE COMPANY, Plaintiff and Respondent, v.
UTICA NATIONAL INSURANCE GROUP et al., Defendants and Appellants.

## COUNSEL

Ericksen Arbuthnot and Lois A. Lindstrom for Defendants and Appellants.

Daley & Heft, Lee H. Roistacher and Robert W. Brockman, Jr., for Plaintiff and Respondent.

## OPINION

**NARES, J.**—This equitable contribution action involves three insurers, GuideOne Mutual Insurance Company (GuideOne), whose insurance policy covered an employee who negligently caused injuries to another person while driving his car in connection with business for his employer, Utica National Insurance Group and Graphics Art Mutual Insurance Company (collectively Utica), whose policies only covered the driver's employer, which was only vicariously liable for the actions of its employee. GuideOne and Utica settled the underlying action, exhausting GuideOne's primary and umbrella policies. GuideOne thereafter sought and obtained, by summary judgment, contribution in the amount of $600,000 from Utica's umbrella policy, representing an alleged overpayment by GuideOne based upon its pro rata share of coverage. Utica appeals, asserting that because its umbrella policy covered a party only vicariously liable, it should not share pro rata with GuideOne's umbrella policy that covered the tortfeasor employee.

We conclude the court erred in awarding GuideOne equitable contribution in the amount of $600,000 from Utica's umbrella policy, which represented GuideOne's pro rata share of coverage under its own umbrella policy. This is so because an employer is only vicariously liable for the actions of the tortfeasor employee, and therefore all of the insurance policies covering the tortfeasor employee, primary and excess, must be exhausted before the umbrella policy of an insurer that covered only the employer must make a contribution.

### INTRODUCTION

While working as a pastor for Crosswinds Community Church (Crosswinds) and Christian Evangelical Assemblies (CEA), and while driving his own car, Gary West struck and severely injured Robert Jester, who was riding his motorcycle. Jester and his wife subsequently sued West, Crosswinds and CEA for personal injuries (*Jester* action).

The *Jester* action settled for $4.5 million. West's personal auto insurer, State Farm, paid its $100,000 policy limits. Crosswinds's insurer, plaintiff

and respondent GuideOne, paid its $1 million policy limits on a commercial general auto liability policy. GuideOne also paid its $1 million policy limits on a commercial liability umbrella policy. CEA's insurers, Utica, paid its $1 million policy limits on a commercial auto liability policy and $1.4 million out of its $5 million policy limits on a commercial liability umbrella policy.

GuideOne subsequently initiated this equitable contribution action against Utica to collect alleged overpayments it made in the *Jester* action. GuideOne thereafter brought a motion for summary judgment, which the court granted, finding GuideOne's contribution to the *Jester* settlement exceeded its proportionate share of coverage by $600,000. The trial court determined the priority of coverage for the $4.5 million *Jester* action settlement amongst the five policies was (1) State Farm's $100,000 policy; (2) GuideOne's $1 million primary policy and Utica's $1 million primary policy; and (3) $400,000 from GuideOne's $1 million umbrella policy and $2 million from Utica's $5 million umbrella policy, representing the ratio as to the respective coverage held by GuideOne and Utica under those umbrella policies. The court thereafter entered a $600,000 judgment in favor of GuideOne, plus prejudgment interest.

On appeal, Utica asserts the court erred by (1) finding that Utica's umbrella policy covering a party only vicariously liable (CEA) shared pro rata with GuideOne's umbrella policy covering the primary tortfeasor (West) and (2) awarding prejudgment interest from the filing of the lawsuit because GuideOne's damages were not fixed until the court entered judgment in its favor.

As we shall explain in more detail, *post*, we conclude that the court erred in entering a judgment for $600,000 in favor of GuideOne and that judgment must be reversed. Accordingly, the award of prejudgment interest to GuideOne on that $600,000 judgment must also be reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Background*

CEA is a religious organization that trains, licenses and ordains ministers, promotes mission activities, and establishes and oversees churches. Crosswinds is one of the churches operating under CEA's oversight and control. Gary West was employed by CEA as Crosswinds's pastor.

### B. *The Accident*

On April 8, 2007, West and his wife were taking another couple out to lunch in connection with Crosswinds's and CEA's business. West was driving

his 2002 Hyundai Elantra. While making a left turn into a restaurant parking lot, West collided with Jester, who was riding his motorcycle, resulting in catastrophic injuries to Jester.

### C. *The* Jester *Action*

In May 2007 Jester and his wife, Susan, sued CEA, Crosswinds and West for personal injuries. Jester alleged that West owned and was driving the Hyundai involved in the accident. Jester further alleged that West was a minister ordained by CEA and was an agent or employee of CEA and Crosswinds at the time of the accident.

### D. *Relevant Insurance Policies*

#### 1. *State Farm auto liability policy issued to West*

West maintained a State Farm $100,000 auto liability insurance policy listing his 2002 Hyundai Elantra as a covered vehicle.

#### 2. *GuideOne policies issued to Crosswinds*

GuideOne issued Crosswinds a commercial general liability insurance policy with a $1 million hired and nonowned business auto policy coverage endorsement. Under this policy, Crosswinds is an insured, as is any Crosswinds employee such as West acting within the course and scope of his or her employment. The policy further provides that "[w]hen this endorsement and any other endorsement, Coverage Form or policy covers on the same basis we will pay only our share. Our share is the proportion that the Limit of Insurance of our endorsement bears to the total of the limits of all the endorsements, Coverage Forms and policies covering on the same basis."

GuideOne also issued Crosswinds a $1 million commercial umbrella liability policy. The scheduled underlying insurance includes the GuideOne $1 million commercial general liability policy that covered West. An "insured" includes, among others, "[a]ny other person . . . who is an insured under any policy of 'scheduled underlying insurance.' " The policy contains an "other insurance" clause stating "[t]his insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis" and provides that GuideOne "will pay only our share of the amount . . . that exceeds the sum of . . . [t]he total amount that all such other insurance would pay for the loss in the absence of this insurance . . . ."

#### 3. *Utica policies issued to CEA*

Utica issued CEA a $1 million commercial auto policy. Under the policy, CEA is an insured "for any covered 'auto'." A "Covered Auto" includes

"nonowned autos" which are those the insured does "not own, lease, hire, rent or borrow that are used in connection with your business" and includes " 'autos' owned by your 'employees' . . . but only while used in your business or your personal affairs." The policy contains an "Other Insurance" clause providing that "[f]or any covered 'auto' you own, this Coverage Form provides primary insurance. For any covered 'auto' you don't own, this Coverage Form is excess over any other collectable insurance" and "[w]hen this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all Coverage Forms and policies covering on the same basis."

Utica also issued CEA a $5 million commercial liability umbrella policy. The policy provides Utica will "pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage.' " "Retained limit" is defined as "the available limits of 'underlying insurance' scheduled in the declarations . . . [¶] . . . that will be paid by the insured before this insurance becomes applicable . . . ." The policy lists as underlying insurance the Utica $1 million commercial auto policy. The umbrella policy contains an "Other Insurance" provision stating the policy is "excess over, and shall not contribute with any of the other insurance, whether primary, excess, contingent or on any other basis . . . [¶] [and w]hen this insurance is excess over other insurance, we will pay only our share of the 'ultimate net loss' that exceeds the sum of: [¶] [t]he total amount that all such other insurance would pay for the loss in absence of this insurance."

E. Jester *Settlement*

The *Jester* action settled for $4.5 million. State Farm paid $100,000, GuideOne paid $2 million ($1 million from its primary insurance and $1 million from its umbrella policy) and Utica paid $2.4 million ($1 million from its primary insurance and $1.4 million from its umbrella policy). GuideOne and Utica reserved their right to seek contribution from each other.

F. *GuideOne's Complaint*

In November 2009 GuideOne initiated this equitable contribution action against Utica seeking reimbursement for alleged overpayments made in connection with the *Jester* action exceeding its proportionate share of available coverage. GuideOne further sought interest on its damages.

### G. *GuideOne's Motion for Summary Judgment*

In December 2010 GuideOne moved for summary judgment. GuideOne argued that Insurance Code section 11580.9, subdivision (d) (section 11580.9(d))[1] established that West's $100,000 State Farm policy was primary because it described West's vehicle. GuideOne asserted that section 11580.9(d) further made the four policies provided by GuideOne and Utica excess to the State Farm policy. GuideOne contended that after State Farm contributed $100,000 to the $4.5 million *Jester* settlement, contributions from GuideOne and Utica to the remaining $4.4 million must be prorated to reflect each insurer's proportionate share of the total coverage available. GuideOne argued that it should have only paid one-fourth of the remaining $4.4 million, or $1.1 million. GuideOne argued that it thus overpaid and Utica owed it $900,000.

In opposition to GuideOne's motion, Utica argued that because the tortfeasor West was an insured under both GuideOne policies, and the Utica policies insured CEA, which was only vicariously liable as West's employer, both GuideOne's $1 million commercial general liability policy and its $1 million umbrella policy had to be exhausted before Utica contributed anything to the *Jester* settlement. Thus, asserted Utica, it owed GuideOne no further contribution to the *Jester* action settlement.

On February 18, 2011, the court granted GuideOne's motion for summary judgment. The trial court found all five policies provided coverage and under section 11580.9(d) the $100,000 State Farm policy was primary and had to pay first. After that, the court concluded "[b]oth the GuideOne and Utica primary policies must be exhausted before either of the umbrella policies is reached. [Citation.] This court finds no authority supporting the prioritization of GuideOne's umbrella policy over Utica's primary policy based on the fact that the GuideOne policies recognize West as an 'insured.' Both GuideOne's and Utica's policies contain language making the policies excess to all other collectible insurance. Both GuideOne's and Utica's umbrella policies state the coverage is excess. As both 'excess only' other-insurance clauses meet, the court orders the insurers to pro rate. [Citation.] [¶] This court finds the priority of coverage as (1) State Farm policy in the amount of $100,000, (2) GuideOne primary policy in the amount of [$1 million], and Utica primary policy in the amount of [$1 million], and (3) GuideOne umbrella policy in the amount of $400,000 and Utica umbrella policy in the amount of [$2 million] (ratio of 1:6). [Citation.] [¶] GuideOne is, therefore, entitled to equitable contribution in the amount of $600,000."

---

[1] All further undesignated statutory references are to the Insurance Code.

## DISCUSSION

### I. *STANDARD OF REVIEW*

"[I]n general, appellate review of a trial court's decision to grant or deny a summary judgment motion is on the basis of a de novo examination of the evidence before the trial court and an independent determination of its effect as a matter of law. [Citation.] This rule is applicable in the usual case, in which the questions presented upon the motion for summary judgment are matters of law not involving the exercise of judicial discretion. [Citations.] However, in the limited and exceptional circumstances where a trial court is required to exercise its discretion in passing on a Code of Civil Procedure section 437c motion for summary judgment, and grants or denies such a motion on the basis of its equitable determination of a question as to which the exercise of judicial discretion is proper, the standard of review on appeal necessarily is whether the trial court's decision amounted to an abuse of discretion." (*Centennial Ins. Co. v. United States Fire Ins. Co.* (2001) 88 Cal.App.4th 105, 110–111 [105 Cal.Rptr.2d 559].)

A grant of summary judgment in an equitable contribution action allocating responsibility for a loss amongst multiple insurers is reviewed for an abuse of discretion. (*Centennial Ins. Co. v. United States Fire Ins. Co., supra,* 88 Cal.App.4th at p. 111.)

However, while the abuse of discretion standard gives the trial court substantial latitude, "[t]he scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].)

### II. *ANALYSIS*

#### A. *Allocation and Priority of the Insurance Policies*

On appeal, Utica asserts both GuideOne policies were primary and both of Utica's policies were excess because the GuideOne policies insured West, the tortfeasor, and the Utica policies insured CEA, which was only vicariously liable. We conclude that Utica is correct.

##### 1. *Section 11580.9(d)*

Section 11580.9(d) provides: "Except as provided in subdivisions (a), (b), and (c), where two or more policies affording valid and collectible liability

insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary *and the insurance afforded by any other policy or policies shall be excess.*"[2] (Italics added.)

■ The California Legislature enacted section 11580.9 "to provide consistency in the allocation of loss between coinsurers" (*Scottsdale Ins. Co. v. State Farm Mutual Automobile Ins. Co.* (2005) 130 Cal.App.4th 890, 902 [30 Cal.Rptr.3d 606]) and to resolve "conflicts and litigation over which of two or more applicable policies providing automobile liability insurance are to be deemed primary or excess" (*Continental Ins. Co. v. Lexington Ins. Co.* (1997) 55 Cal.App.4th 637, 642 [64 Cal.Rptr.2d 116]). Where applicable, the statutory scheme "makes a definitive imposition of primary and/or excess liability on insurers in given situations." (*Ibid.*; see *Wilshire Ins. Co., Inc. v. Sentry Select Ins. Co.* (2004) 124 Cal.App.4th 27, 33–34 [21 Cal.Rptr.3d 60].) When section 11580.9(d) applies "any policy which describes or rates the motor vehicle as an 'owned automobile' bears primary responsibility for the loss and any other policy is excess." (*Transport Indemnity Co. v. Royal Ins. Co.* (1987) 189 Cal.App.3d. 250, 253 [234 Cal.Rptr. 516].)

Because the State Farm policy provided coverage for West's vehicle as an owned or rated automobile, it is conclusively deemed a primary policy under section 11580.9(d). The GuideOne policies did not specifically identify West's vehicle. However, they covered West and covered the vehicle as a nonowned auto. Likewise, the Utica policies did not specifically identify West's vehicle, but covered CEA for West's vehicle as a nonowned auto. Thus, section 11580.9(d) renders the two GuideOne policies and the two Utica policies excess to the primary State Farm policy.

2. *The court's determination regarding priority of coverage and prorated contribution*

■ After concluding that the State Farm policy paid first because it was primary (a point no party disputes), the trial court had to prioritize the four policies deemed "excess" policies under section 11580.9(d). While section 11580.9(d) establishes that both the GuideOne and both the Utica policies are excess to the State Farm policy, the statute does not provide a method for allocating coverage amongst multiple policies deemed excess by the statute. "Given the conclusive presumption provided in section [11580.9(d)], the [policy covering the driver] is also primary to the [employer's] policy. *The priority of liability of the remaining policies is not governed by section*

---

[2] By their terms, subdivisions (a), (b), and (c) do not apply here.

[*11580.9(d)*].” (*Hartford Accident & Indemnity Co. v. Sequoia Ins. Co.* (1989) 211 Cal.App.3d 1285, 1302 [260 Cal.Rptr. 190], italics added; see *CSE Ins. Group v. Northbrook Property & Casualty Co.* (1994) 23 Cal.App.4th 1839, 1844 [29 Cal.Rptr.2d 120] [noting that the statutory scheme is incomplete].)

Thus, it was necessary for the trial court, applying applicable principles of law, to determine in which order and in what amounts the two GuideOne and two Utica policies had to contribute to the *Jester* settlement.

■ *United States Fire Ins. Co v. National Union Fire Ins. Co.* (1980) 107 Cal.App.3d 456 [165 Cal.Rptr. 726] (*United States Fire*) is instructive. *United States Fire* arose out of an airplane crash and addressed the priority between insurance that covered the pilot, who was operating the plane on company business, and insurance that covered the pilot's employer, which was only vicariously liable. (*Id.* at pp. 466–467.) The Court of Appeal held there that “[t]he nonowned aircraft coverage under National's policy was expressly limited to the vicarious liability of the named insured, U.S West Investments [the employer]. As such, it was secondary to *any* coverage of Morgan [the pilot] individually as negligent operator of the aircraft.” (*Id.* at p. 466, italics added.) As the Court of Appeal further stated, “The obligations of Morgan and of U.S. West Investments were, therefore, governed by the rule stated in *Continental Cas. Co.* v. *Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 428–429 [296 P.2d 801]: 'Where a judgment has been rendered against an employer for damages occasioned by the unauthorized negligent act of his employe, the employer may recoup his loss in an action against the negligent employe [Citations]; that is, as between employer and employe in such a situation, *the obligation of the employe is primary and that of the employer secondary . . . .*' ” (*Id.* at p. 467.)

The Ninth Circuit reached a similar result in *Canadian Indemnity Co. v. United States Fidelity & Guaranty Co.* (9th Cir. 1954) 213 F.2d 658, 659, finding a policy that covered an employee was primary and the policy that covered the employer was excess.

GuideOne attempts to distinguish these cases in one sentence of its respondent's brief by stating “neither case involved application of [section] 11580[.9(d)], and neither case involved excess policies.”

However, all section 11580.9(d) provides is that after the policy held by the driver, all other policies “shall be excess.” It does not address the priority and allocation of the other policies: “Given the conclusive presumption provided in section [11580.9(d)], the [policy covering the driver] is also primary to the [employer's] policy. *The priority of liability of the remaining policies is not governed by section [11580.9(d)].*” (*Hartford Accident & Indemnity Co. v. Sequoia Ins. Co., supra*, 211 Cal.App.3d at p. 1302, italics added.)

■ Moreover, GuideOne provides no rationale for its proposition that umbrella or "excess" policies should be treated differently than primary policies for purposes of priority. Both GuideOne's primary and umbrella policies covered the negligent driver, and both Utica's primary and umbrella policies covered the employer, which was only vicariously liable. Therefore, under the rule enunciated in *United States Fire*, both GuideOne policies are primary to both Utica policies, because it is based upon principles of vicarious liability, not more general rules governing primary and excess policies.

■ This conclusion is also supported by rules of indemnity as between a primary tortfeasor and one who is only vicariously liable. A vicariously liable party has the right to pursue indemnity against the primary tortfeasor and/or *any insurance policy that covers the primary tortfeasor*. (*Popejoy v. Hannon* (1951) 37 Cal.2d 159, 173 [231 P.2d 484]; *Continental Cas. Co. v. Phoenix Constr. Co., supra*, 46 Cal.2d at p. 429 ["Under equitable principles of subrogation the insurer of the employer who has been compelled to pay the judgment against the employer may recover against the negligent employe or the employe's insurer."].)

Indeed, under the definition of "insured" in GuideOne's policy, CEA is an insured of GuideOne: "Anyone else who is not otherwise excluded under paragraph b. above and is liable for the conduct of an 'insured' but only to the extent of that liability." Because CEA is an insured under this language of GuideOne's primary policy, GuideOne's umbrella policy also covers CEA by definition: "Any other person . . . who is an insured under any policy of 'scheduled underlying insurance.' "

The reason for this language is apparent. It is to protect and cover those who are only vicariously liable for the actions of an insured under that policy.

Accordingly, both GuideOne's primary and umbrella policies must exhaust before Utica's policies are implicated.

B. *Award of Prejudgment Interest*

Because we are reversing the $600,000 judgment in favor of GuideOne, we must also necessarily reverse the award of prejudgment interest that is based upon that judgment.

## DISPOSITION

The judgment is reversed. Utica shall recover its costs on appeal.

McConnell, P. J., and Haller, J., concurred.