Filed 7/19/13  Nylim Real Estate Mezzanine Fund v. Lembi CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| NYLIM REAL ESTATE MEZZANINE FUND II, L.P., <br><br>        Plaintiff and Respondent, <br><br> v. <br><br> FRANK LEMBI, as Trustee, etc., <br><br>        Defendant and Appellant. | A135507 <br><br> (City & County of San Francisco Super. Ct. No. CGC-11-510281) |

        This appeal has been taken from the trial court's ruling that granted plaintiff's motion for summary judgment and the subsequent entry of judgment in favor of plaintiff in an action for breach of a loan guaranty agreement.  Appellant claims the agreement was not supported by consideration, and breach of the agreement did not cause damages to plaintiff.  He also challenges the liquidated damages provision of the agreement as an unenforceable penalty.  We conclude that the loan and guaranty modification was supported by consideration, the breach of the agreement by failure to pay the loan caused plaintiff damages, and the damages provision was not unreasonable.  We therefore affirm the judgment.

### STATEMENT OF FACTS

        In March of 2007, Personality Hotels III, LLC and Hotel Metropolis II, LLC (the Borrowers), obtained a loan from plaintiff's predecessor, Nomura Credit & Capital, Inc. (Nomura or the Lender) in the total amount of $75.9 million, to finance the renovation of hotel properties.  The loan was secured by two promissory notes executed by the

Borrowers in favor of Nomura on March 30, 2007: Note A in the amount of $58.4 million; Note B to secure the remaining $17.4 million. The loan agreement provided that the lender was entitled to sell all or any portion of the loans and security interests to third party investors as collateralized debt obligations, and required the Borrowers to execute any amendments to the loan documents or new component notes as requested by the Lender to facilitate the most favorable loan-to-value ratios and rating levels for the securities.

Concurrently, defendant Frank Lembi, acting in his individual capacity and as Trustee for the Olga Lembi Revocable Trust (the Trust), and his son Walter Lembi, who were indirect owners of the Borrowers, executed two documents guaranteeing the Borrowers' indebtedness to Nomura pursuant to Notes A and B: a Guaranty of Payment Obligations (the Payment Guaranty), and an Indemnity and Guaranty Agreement (the Indemnity Agreement).[1] The Guarantors were required by the Indemnity Agreement to execute any documents requested by the Lender which did not alter the "essential economic terms of the indebtedness" or impose a "greater personal liability in connection with the indebtedness" of the guaranteed loan.

On August 27, 2007, the original loan indebtedness of the Borrowers was modified and split into two loans: one, secured by the real estate, in the amount of $58.9 million; the other, a "mezzanine loan" to two affiliates of the Borrowers, Personality Hotels III Mezz, LLC, and Hotel Metropolitis II, Mezz, LLC, "special purpose entities" which secured the mezzanine loan in the amount of $17.4 million with stock of the real estate holding companies owned by the Guarantors.[2]

Pursuant to the Modification Agreement the Borrowers executed two amended promissory notes in favor of Nomura. Amended Note A secured the Borrower's repayment of $44.4 million of the $58.9 million "Senior Loan." Amended Note B in

---

[1] We will refer to defendant Frank Lembi and his son Walter collectively as the Guarantors. Walter Lembi died before this action was commenced and is not a party to this appeal.

[2] Although the Mezzanine Loan borrowing entities under the original and modified loan agreements were different, even if related, for the sake of convenience we will refer to them as the Borrowers.

favor of Nomura as the "Mezzanine Lender" secured the $17.4 million balance of the loan, and provided that the entire debt was immediately payable upon any defined default event by the Borrowers. The amount of the loan guaranteed by the Guarantors under the original agreement was effectively reduced from $17 million to $5 million. According to the Mezzanine Loan Agreement the Borrowers agreed to make monthly interest payments over the life of the loan, and a balloon payment equal to all outstanding balances and accrued interest at the maturity date of the loan on November 9, 2009.

The same day, Lembi, in his individual capacity and as Trustee of the Trust, executed a Mezzanine Payment Guaranty and a Mezzanine Indemnity Guaranty at the request of Nomura, that effectively guaranteed payment of the Mezzanine Note. According to the Mezzanine Payment Guaranty, the Guarantors unconditionally and irrevocably guaranteed the Lender and its assigns "payment and performance of the Guaranteed Obligations as and when [those become] due and payable," and unconditionally agreed to be "liable for the Guaranteed Obligations as a primary obligor" in the amount of $12 million, plus accrued interest, costs, and attorney fees, immediately upon the Borrower's default and the Lender's request for payment. On September 17, 2007, Nomura assigned all rights and obligations under the Mezzanine Loan Agreement, the Mezzanine Payment Guaranty and the Mezzanine Indemnity Guaranty to plaintiff NYLIM Real Estate Mezzanine Fund, L.P. (Nylim).

The Borrowers defaulted on the loans, and after February of 2009 made no payments on the Mezzanine Loan, including the $17 million principal balance due on the maturity date. In March of 2010, the Borrowers filed a Chapter 11 bankruptcy reorganization petition in an effort to avoid foreclosure. When outside investors failed to materialize to recapitalize the Borrowers, the reorganization proceeding was converted into a Chapter 7 liquidation. A bankruptcy trustee was appointed to effectuate non-judicial foreclosure sales of the hotels by the Lender in May of 2010.

Plaintiff NYLIM repeatedly demanded payment of the Mezzanine Loan and costs by the Guarantors pursuant to the Mezzanine Payment Guaranty. The Guarantors did not respond.

3

The present action for breach of contract was initiated by plaintiff NYLIM against defendants Lembi individually and as trustee of the Trust on April 18, 2011.[3] The trial court granted plaintiff's motion for summary judgment, and entered judgment against Lembi as trustee in the amount of $32,461,026.73 on February 28, 2012.  This appeal followed.

## DISCUSSION

### I. The Consideration for the Loan Modification.

Defendant complains that triable issues of fact remain to be litigated in plaintiff's breach of contract case, one of which is whether consideration was received for the loan modification in August of 2007.  He claims that only plaintiff benefitted from the modification, so the contract was not supported by consideration and is unenforceable.  He therefore claims the trial court erred by granting plaintiff's motion for summary judgment.

We evaluate the trial court ruling on plaintiff's motion for summary judgment in accordance with well-settled law.  (*Sacks v. FSR Brokerage, Inc*. (1992) 7 Cal.App.4th 950, 962.)  " '[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law.'  [Citation.]"  (*Behnke v. State Farm General Ins. Co*. (2011) 196 Cal.App.4th 1443, 1463; see also *Nalwa v. Cedar Fair, L.P*. (2012) 55 Cal.4th 1148, 1153–1154.)  "A plaintiff moving for summary judgment establishes the absence of a defense to a cause of action by proving 'each element of the cause of action entitling the party to judgment on that cause of action.'  [Citation.]  The plaintiff need not, however, disprove any affirmative defenses alleged by the defendant.  [Citation.]  Once the plaintiff's burden is met, the burden of proof shifts to the defendant 'to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.'  [Citation.]  In meeting this burden, the defendant must present 'specific facts showing' the existence of

---

[3] The action against Lembi individually was stayed by his bankruptcy petition filed on October 20, 2011.  Our references to defendant are to Lembi in his trustee capacity.

4

the triable issue of material fact." (*City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1081.)

" 'On appeal "[w]e review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citations.]" [Citation.]' " (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 886, quoting *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253; see also *GuideOne Mutual Ins. Co. v. Utica National Ins. Group* (2013) 213 Cal.App.4th 1494, 1501.) " ' "Review of a summary judgment motion by an appellate court involves application of the same three-step process required of the trial court. [Citation.]" ' [Citation.] The three steps are (1) identifying the issues framed by the complaint, (2) determining whether the moving party has made an adequate showing that negates the opponent's claim, and (3) determining whether the opposing party has raised a triable issue of fact." (*Food Safety Net Services v. Eco Safe Systems USA, Inc*. (2012) 209 Cal.App.4th 1118, 1124.)

Looking at the issues framed by plaintiff's breach of contract complaint, the "essential elements of a claim of breach of contract, whether express or implied, are the contract, the plaintiff's performance or excuse for nonperformance, the defendant's breach, and the resulting damages to the plaintiff." (*San Mateo Union High School Dist. v. County of San Mateo* (2013) 213 Cal.App.4th 418, 439 (*San Mateo Union High*); see also *ASP Properties Group, L.P. v. Fard, Inc*. (2005) 133 Cal.App.4th 1257, 1268–1269.) Essential to the existence of a contract is a " 'sufficient cause or consideration, for a promise unsupported by consideration has no binding force. . . .' [Citations.]" (*Torlai v. Lee* (1969) 270 Cal.App.2d 854, 858.)

"Civil Code section 1605 defines consideration as '[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor . . . .' Thus, there are two requirements in order to find consideration. The promisee must confer (or agree to confer) a benefit or must suffer (or agree to suffer)

5

prejudice. We emphasize either alone is sufficient to constitute consideration; 'it is not necessary to the existence of a good consideration that a benefit should be conferred upon the promisor. It is enough that a "prejudice be suffered or agreed to be suffered" by the promisee. [Citation.]' [Citation.]" (*Steiner v. Thexton* (2010) 48 Cal.4th 411, 420–421; see also *Estate of Bray* (1964) 230 Cal.App.2d 136, 141–142.) It is insufficient, however, to confer a benefit or suffer prejudice for there to be consideration: The second requirement is that the benefit or prejudice must actually be bargained for as the exchange for the promise. Put another way, the benefit or prejudice must have induced the promisor's promise. (See *Jara v. Supreme Meats, Inc.* (2004) 121 Cal.App.4th 1238, 1249.)

Here, the parties had an original loan agreement that defined their mutual rights and obligations. The original agreement authorized the Lender to sell a portion of the loan, split the promissory note, or modify the loan provisions to obtain more advantageous rating levels. The Borrowers were required to execute any amended loan documents and notes requested by the Lender, and the Guarantors promised to cooperate with a modification by executing new guaranty documents. The Modification Agreement challenged by plaintiff in this action was nothing more than a restructuring of the loan and guaranty provisions as provided by the original agreements. The governing loan rights and obligations were superseded and replaced with updated provisions which did not impose a greater personal liability on the Guarantors.

" '[T]he surrendering or foregoing of a legal right constitutes a sufficient consideration for a contract if the minds of the parties meet on the relinquishment of the right as a consideration. [Citation.]' [Citation.]" (*Anchor Cas. Co. v. Surety Bond Sav. & Loan Assn.* (1962) 204 Cal.App.2d 175, 181; see also *Estate of Bishop* (1962) 209 Cal.App.2d 48, 55–56.) According to settled law, the extinguishment of the preexisting notes and guarantees, and the relinquishment of the Lender's rights thereunder, constituted adequate detriment and prejudice to the Lender to provide consideration to support the Borrowers' and Guarantors' promises to repay the new notes. (See *Popp v. Exchange Bank* (1922) 189 Cal. 296, 300; *Stroud v. Thomas* (1903) 139 Cal. 274, 276–

6

277; *Pierce v. Wright* (1953) 117 Cal.App.2d 718, 723; *Bank of America v. Hollywood Improv. Co.* (1941) 46 Cal.App.2d 817, 821; *Italo Pet. Corp. of America v. Shingle* (1937) 23 Cal.App.2d 422, 427.) Further, the Modification Agreement and two amended promissory notes in favor of Nomura were executed concurrently with the Mezzanine Payment Guaranty and a Mezzanine Indemnity Guaranty, and may serve as consideration for each other. (See *Glickman v. Collins* (1975) 13 Cal.3d 852, 860; *Pacific States Sav. etc. Co. v. Stowell* (1935) 7 Cal.App.2d 280, 281.) By surrendering rights under the original notes and guaranty, the Lender furnished consideration for the Guarantors' promises under the Mezzanine Payment Guaranty and a Mezzanine Indemnity Guaranty. (*Bank of America, supra,* at p. 821.)

The Guarantors of both the original agreement and the modification at issue here were the same. They were officers and shareholders of the Borrowers in these financial transactions. Upon execution of the agreement and then the modification, they derived a benefit from the transactions, in itself valid consideration for the guarantee. (*Mortgage Guarantee Co. v. Chotiner* (1936) 8 Cal.2d 110, 112; *Patek & Co. v. Vineberg* (1962) 210 Cal.App.2d 20, 23.) The Guarantors also experienced a reduction in the amounts they personally guaranteed. Their original payment guaranty was reduced from $17 million to $5 million.

It is also true that it was contemplated when the Borrowers and Guarantors signed the original loan agreements that the Lender, Nomura, intended to sell the senior Borrowers' indebtedness to other investors like respondent NYLIM. The Guarantors agreed to cooperate in Nomura's efforts to sell this indebtedness, including executing and delivering to Nomura or the transferees any necessary documents.

On this record, we find sufficient evidence of lawful consideration to uphold the trial court's determination of the issue.

## II. The Causation Element.

Defendant also argues that element of causation was not eliminated as a triable issue of fact. He asserts that the *bankruptcy* of the Borrowers did not cause damages to plaintiff, as alleged, but rather that "the damage was caused by a non-judicial foreclosure

against the three hotels, which the bankruptcy attempted to prevent." Therefore, defendant complains that the requisite element of a "causal connection between the breach and the damages claimed," was not established by plaintiff.

We have no disagreement with the principle that "[u]nder a contract theory plaintiffs must establish that defendants' breach of its obligation proximately caused harm." (*San Mateo Union High, supra,* 213 Cal.App.4th 418, 440.) Where we depart from defendant's contention is with his premise that only the bankruptcy filed by the Borrowers could serve as the cause of damages in this case. What caused plaintiff's damages was the default of the Borrowers, followed by the repeated failure of defendant as the Guarantor to abide by the promise to satisfy the Mezzanine Payment Guaranty. The element of causation was conclusively proved by plaintiff.

### III. The Mezzanine Payment Guarantee as a Prohibited Penalty.

Finally, defendant claims that the Mezzanine Payment Guaranty and Mezzanine Indemnity Guaranty must be found unenforceable as a "prohibited penalty." Defendant maintains that the agreements required payment of the "entire loan balance" of $17 million following the Borrowers' breach, which under the circumstances "constitutes an improper penalty where the provision was unreasonable under the circumstances existing at the time the contract was made."

We find that the loans and guarantees are not invalid as unenforceable penalties. "To avoid uncertainty and litigation if a default occurs, the parties to a contract may use a liquidated damages clause to determine the measure of damages in advance. [Citation.] A liquidated damages clause is generally valid unless the party challenging it shows it was unreasonable under the circumstances existing at the time the parties entered into the contract. [Citations.] In the absence of a reasonable relationship between the liquidated damages and the actual damages the parties could have contemplated for breach, 'a contractual clause purporting to predetermine damages "must be construed as a penalty." [Citation.]' [Citation.] ' "A contractual provision imposing a 'penalty' is ineffective, and the wronged party can collect only the actual damages sustained." [Citations.]' [Citations.]" (*Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1278.)

8

In nonconsumer contracts, Civil Code section 1671, subdivision (b), provides that a liquidated damages provision is "valid unless the party seeking to invalidate that provision 'establishes that the provision was unreasonable under the circumstances existing at the time the contract was made.' " (*Utility Consumers' Action Network, Inc. v. AT&T Broadband of Southern Cal., Inc*. (2006) 135 Cal.App.4th 1023, 1028.) Thus, the statute creates "a presumption of validity of a liquidated damages clause, and places the burden on the party who seeks invalidation" to show the provision was unreasonable. (*Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 654.) Despite defendant's unsupported *assertion* that the "entire loan balance" was not a "reasonable approximation of the damages" that would ensue from the bankruptcy of the Borrowers, we find the damages provision valid. According to the evidence presented, the sole valuable asset of the Borrowers was their ownership interest in the hotel properties. Upon bankruptcy and default of the Borrowers, a reasonable assumption was that the entire $17 million of the Mezzanine Loan would not be paid or secured. The liquated damages clause was therefore reasonable.

### DISPOSITION

Accordingly, the judgment is affirmed.

_____

Dondero, J.

We concur:

_____

Margulies, Acting P. J.

_____

Banke, J.

9