Filed 1/14/15 Unmodified version attached

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HYUNDAI SECURITIES CO., LTD., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> IK CHI LEE, <br><br> Defendant and Appellant. | B257276 <br><br> (Los Angeles County <br> Super. Ct. No. BC456484) <br><br> ORDER MODIFYING OPINION <br> [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on January 13, 2015, be modified.

1.      On page 4, under **DISCUSSION**, part A, Standard of Review, is modified to read as follows:

**A.      Standard of Review**

**A summary judgment, having been given as a matter of law, is reviewed de novo.  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)  The parties do not contend there are any triable issues of fact.  Questions of law regarding the application of statutes, such as the Act, are reviewed de novo.  (See *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799-801; *MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1081-1082.)  A determination of**

**whether to recognize a foreign-country money judgment under the public policy provision of the Act (§ 1716, subd. (c)(3)) is discretionary (see 13, part II, West's U. Laws Ann. (2014 Cum. Annual Pocket Part) Foreign-Country Money Judgments Recognition Act, p. 29 (U. Laws Ann.)), which determination is reviewed for an abuse of discretion—i.e. whether the trial court "exceeded the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.) As discussed, Lee does not contend there was an abuse of discretion but rather argues that the trial court was required by law not to recognize an element of the foreign-country money judgment because it was contrary to the public interest. Moreover, in a case such as this one, based on uncontradicted facts, we could determine as a matter of law whether or not there was an abuse of discretion. (Cf. *GuideOne Mutual Ins. Co. v. Utica National Ins. Group* (2013) 213 Cal.App.4th 1494, 1501.)**

2.     On page 12, the last paragraph in part E, the fourth sentence should be revised to read,

**But Lee has not argued that the trial court failed to exercise its discretion or abused its discretion.**

No change in judgment.

---

MOSK, Acting P. J.                    KRIEGLER, J.                    GOODMAN, J.[*]

---

[*]     Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 1/13/15 Unmodified version

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| HYUNDAI SECURITIES CO., LTD., | B257276 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC456484) |
| v. | |
| IK CHI LEE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Ernest M. Hiroshige, Judge.  Affirmed, in part, reversed, in part, and remanded.

Kim, Park, Choi & Yi, Tony K. Kim, Michael Yi, and Michael Schillaci for Defendant and Appellant.

Lim, Ruger & Kim, Richard M. Ruger, Lisa J. Yang, and George T. Busu for Plaintiff and Respondent.

## INTRODUCTION

We hold that under California's "Uniform Foreign-Country Money Judgments Recognition Act" (Code Civ. Proc., §§ 1713-1724 (the Act))[1], a trial court may recognize (i) a foreign judgment for indemnification of a criminal penalty paid by plaintiff to an agency of the foreign government; and (ii) a 20 percent postjudgment interest rate on a foreign judgment, as provided by the law of the foreign state; but the trial court, in recognizing a foreign judgment, may not enter a California judgment imposing postjudgment interest on the California judgment at a rate greater than 10 percent as provided by California law. Thus, we affirm the trial court's judgment recognizing the foreign judgment, but reverse the imposition of a 20 percent postjudgment rate of interest on the California judgment recognizing the foreign judgment.

## BACKGROUND[2]

Defendant and appellant Ik Chi Lee (Lee) was the chief executive officer of plaintiff Hyundai Securities Co., Ltd. (Hyundai) from 1996 to 2000. Several individual shareholders of Hyundai brought in Korea a shareholders' derivative action in the Seoul Southern District Court against Lee, as an officer of Hyundai, for, among other things, securities fraud by Lee during his term as chief executive officer of Hyundai (the Korean Action). Lee appeared in and defended the Korean Action.

In the Korean Action, the Seoul Southern District Court entered against Lee and in favor of Hyundai a judgment in the principal amount of 26,538,718,051 Korean Won

---

[1]     All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

[2]     The following statement of facts is taken, in part, from an earlier appeal in this case. (*Hyundai Securities Co., Ltd. v. Lee* (2013) 215 Cal.App.4th 682.)

2

(KRW) or approximately 24,000,000 United States dollars ($),[3] plus prejudgment and postjudgment interest. (Korean Judgment) A component of the damages was KRW7,000,000,000 for a criminal fine paid by Hyundai in Korea for the acts of Lee. The Korean Judgment also provided for prejudgment interest at five percent per annum and postjudgment interest at the Korean statutory rate of 20 percent per annum.

Lee appealed the Korean Judgment to the Seoul Court of Appeals, which court "dismissed" the appeal. Lee then appealed the Seoul Court of Appeals decision to the Korean Supreme Court, which court also "dismissed" the appeal. Both "dismissals" were based on the appeals lacking merit.

The Korean Supreme Court, by upholding the monetary portions of the Korean Judgment, rendered the Korean Judgment final, conclusive, and enforceable. There is no evidence that the monetary portions of the Korean Judgment were vacated, modified, or set aside, or that there could be any further appeal.

Hyundai filed an action in the Superior Court of the State of California, County of Los Angeles, pursuant to the Act, seeking recognition of the Korean Judgment. Thereafter, Hyundai filed a first amended complaint in which Hyundai alleged the existence of the Korean Judgment that awarded money damages; that the Korean Judgment was final, conclusive, and enforceable in Korea; that Hyundai had already taken steps to execute, and did execute, the Korean Judgment against certain of Lee's real and personal properties in Korea; and that after the amount collected by Hyundai and with accrued interest, Lee owed Hyundai a sum of money plus interest. The trial court entered judgment in favor of Hyundai after granting a petition for entry of judgment pursuant to the Act. In a prior appeal, we reversed the judgment on the ground that recognition of a foreign-country money judgment could not be obtained by petition, but rather had to be based upon a duly noticed motion for summary judgment, judgment on the pleadings, or trial. (*Hyundai Securities, Co., Ltd v. Lee, supra,* 215 Cal.App.4th 682.)

---

[3] The date of the conversion rate provided by Hyundai is unclear and differs from the conversion rate provided in *Hyundai Securities Co., Ltd. v. Lee, supra,* 215 Cal.App.4th at page 686.

Upon remand, Hyundai filed a motion for summary judgment seeking recognition of the unpaid portion of the Korean judgment, ($,031,231—which included indemnification for the fine paid by Hyundai—plus prejudgment interest of $3,652,353, and daily interest accruing after the date of the hearing, or $2,756 per day. Hyundai acknowledged it had been compensated for portions of the judgment. Lee asserted that the trial court could not recognize the KRW7,000,000,000 portion of the judgment as it was a penalty or fine and could not award prejudgment or postjudgment interest at the rate of 20 percent because such a rate was contrary to the law and public policy of California.

The trial court granted Hyundai's motion for summary judgment and awarded Hyundai the principal sum of $5,031,231, interest in the amount of $3,787,397, daily interest of $2,756 per day from May 27, 2014 until entry of judgment, and postjudgment interest on the California judgment at the rate of 20 percent per annum "on the outstanding principal amount of $5,031,231 from the date of entry of this judgment until paid in full." Lee appeals.[4]

## DISCUSSION

### A.      Standard of Review

Questions of law regarding the application of statutes, such as the Act, are reviewed de novo. (See *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432; *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799-801; *MacIsaac v. Waste Management Collection & Recycling, Inc.* (2005) 134 Cal.App.4th 1076, 1081-1082.) A determination of whether to recognize a foreign-country judgment under the public policy provision of the Act (§ 1716, subd. (c)(3)) is discretionary. (See 13, part II, West's U. Laws Ann. (2014 Cum. Annual Pocket Part) Foreign-Country Money Judgments Recognition Act, p. 29 (U. Laws Ann.).) We review such a determination for

---

[4]      Lee does not appeal on all the grounds asserted before the trial court.

4

an abuse of discretion. "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478-479.)

### B. The Act

The Act, which is based on the Uniform Foreign-Country Money Judgments Recognition Act (U. Laws Ann., *supra,* at p. 23; § 1713), applies to foreign-country judgments that grant or deny recovery of a sum of money and that are final, conclusive, and enforceable under the law of the foreign country. (§§ 1715, subd. (a), 1724.) The Act allocates the burden of proof for establishing whether a foreign-country money judgment is within the scope of the Act and whether there is any ground for not recognizing the existence of the judgment. (§§ 1715, subd. (c), 1716, subd. (d).) The party seeking recognition of a foreign-country money judgment has the burden to establish entitlement to recognition under the Act, while the party resisting recognition has the burden of establishing a specified ground for nonrecognition. (§§ 1715, subd. (c), 1716, subd. (d).) The Act specifies that if the trial court finds that a foreign-country money judgment is entitled to recognition in California then, to the extent the judgment grants or denies recovery of a sum of money, it is conclusive between the parties to the same extent as the judgment of a sister state entitled to full faith and credit in this state would be conclusive, and the foreign-country money judgment is enforceable in the same manner and to the same extent as a judgment rendered in this state. (§ 1719.)

The Act provides for various defenses if the foreign-country money judgment is final, conclusive, and enforceable where rendered. Thus, under section 1716, subdivision (c), "A court of this state is not required to recognize a foreign-country judgment if any of the following apply: [¶] . . . [¶] (3) The judgment or the cause of action or claim for relief on which the judgment is based is repugnant to the public policy of this state or of the United States." The Act "does not apply to a foreign-country judgment, even if the judgment grants or denies recovery of a sum of money, to the extent the judgment is [¶] . . . [¶] (2) A fine or other penalty." (§ 1715, subd. (b).) Unless one of the

5

specified defenses applies, the court "shall recognize a foreign-country judgment to which [the Act] applies."  (§ 1716, subd. (a).)

### C. Rules of Interpretation

"Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose.  We first examine the statutory language, giving it a plain and commonsense meaning.  We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.  If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.  If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy. [Citations.]"  (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

### D. Fine or Other Penalty

As noted, the Act does not apply to a foreign-country judgment to the extent it is a "fine or other penalty."  (§ 1715 subd. (b)(2).)  In a criminal action, Hyundai was ordered to pay a fine to a Korean government agency.  In the derivative action in the Korean court, Hyundai sought to recover from Lee the amount of that fine, which it did.  Lee argues that this portion of the judgment is a fine.  He notes that section 1715, subdivision (b)(1) says a foreign-country judgment cannot be recognized to the extent it is "[a] judgment for taxes" but does not require for nonrecognition an actual judgment for a "fine or penalty."  Lee also argues that a judgment awarding damages based on a fine or penalty violates the public policy against enforcing another country's penal laws, which policy is incorporated in the Act.  (See *Java Oil Ltd. v. Sullivan* (2008) 168 Cal.App.4th 1178, 1187; *Huntington v. Attrill* (1892) 146 U.S. 657, 670, 673-674; Rest.3d Foreign Relations Law of the U.S., § 483, p. 611.)  Lee says that the "'essential character and

6

effect'" (*Java Oil Ltd. v. Sullivan, supra,* 168 Cal.App.4th 1187) of the KRW7,000,000,000 judgment are penal. According to Lee, that he had to reimburse Hyundai for this amount, which is based on a fine, does not make it any less a fine. Lee also asserts that the Korean court ordered him to indemnify Hyundai for the fine it paid because he engaged in a public wrong and was responsible for the fine in the first place.

Hyundai argues that the judgment is not for a fine, but rather to indemnify Hyundai for damages it suffered for having had to pay the fine. Hyundai further asserts that the judgment is compensatory in nature—not punitive, and Lee was ordered to pay money to Hyundai—not to any agency of the government of Korea.

The language of the Act does not support Lee's position. The Korean judgment was a damage award to compensate Hyundai for the damages it suffered from having to pay a fine. That judgment was not to any extent a "fine or other penalty." There is nothing in the legislative history of the Act that suggests otherwise. (See Stats. 2007, ch. 42, p. 2543 [enacting Sen. Bill No. 639 (2007-2008 Reg. Sess.)]; Senate Jud. Com. Analysis of Sen. Bill No. 639 (2007-2008 Reg. Sess.).)

As noted, the Act is based on the Uniform Foreign-Country Money Judgments Recognition Act. (U. Laws Ann., *supra,* at p. 23; see Assem. Com. on Judiciary Analysis of Sen. Bill No. 639 (2007-2008 Reg. Sess.) as amended June 5, 2007; § 1722 ["In applying and continuing this uniform act, consideration shall be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it"].)[5] Section 3 of the Uniform Foreign-Country Money Judgments Recognition Act is virtually identical to section 1715 of the Act. The comment to section 3 includes the following language: "4. . . . Foreign-country judgments for taxes and judgments that constitute fines or penalties traditionally have not been recognized and enforced in U.S. courts. (*See, e.g*., Restatement Third of the Foreign Relations Law of the United States § 483 (1986).) Both the 'revenue rule,' under which the courts of one country will not enforce the revenue laws of another country, and the prohibition on enforcement of penal

---

[5]    See generally *Manco Contracting Co. (W.L.L.) v. Bezdikian* (2008) 45 Cal.4th 192, 195, fn. 1, 198.

judgments seem to be grounded in the idea that one country does not enforce the public laws of another. (*See id*. Reporters' Note 2.) The exclusion of tax judgments and judgments constituting fines or penalties from the scope of the Act reflects this tradition. Under Section 11, however, courts remain free to consider whether such judgments should be recognized and enforced under comity or other principles. ¶ A judgment for taxes is a judgment in favor of a foreign country or one of its subdivisions based on a claim for an assessment of a tax. Thus, a judgment awarding a plaintiff restitution of the purchase price paid for an item would not be considered in any part a judgment for taxes, even though one element of the recovery was the sale tax paid by the plaintiff at the time of purchase. Such a judgment would not be one designed to enforce the revenue laws of the foreign country, but rather one designed to compensate the plaintiff. Courts generally hold that the test for whether a judgment is a fine or penalty is determined by whether its purpose is remedial in nature, with its benefits accruing to private individuals, or it is penal in nature, punishing an offense against public justice. *E.g.*, Chase Manhattan Bank, N.A. v. Hoffman, 665 F.Supp. 73 (D. Mass. 1987) (finding that Belgium judgment was not penal even though the proceeding forming the basis of the suit was primarily criminal where Belgium court considered damage petition a civil remedy, the judgment did not constitute punishment for an offense against public justice of Belgium, and benefit of the judgment accrued to private judgment creditor, not Belgium). Thus, a judgment that awards compensation or restitution for the benefit of private individuals should not automatically be considered penal in nature and therefore outside the scope of the Act simply because the action is brought on behalf of the private individuals by a government entity. *Cf*. U.S.-Australia Free Trade Agreement, art. 14.7.2, U.S.-Austl., May 18, 2004 (providing that when government agency obtains a civil monetary judgment for purpose of providing restitution to consumers, investors, or customers who suffered economic harm due to fraud, judgment generally should not be denied recognition and enforcement on ground that it is penal or revenue in nature, or based on other foreign public law). ¶ 5. Under subsection 3(b), a foreign-country money judgment is not within the scope of this Act 'to the extent' that it comes within one of the excluded categories. Therefore, if

8

a foreign-country money judgment is only partially within one of the excluded categories, the non-excluded portion will be subject to this Act." (U. Laws Ann., *supra,* at p. 27.) The comment makes clear that the prohibition against the recognition of a judgment based on a fine or taxes—enforcing the revenue laws or a penal judgment—does not include an award to compensate a plaintiff.

In *Java Oil Ltd. v. Sullivan, supra*, 168 Cal.App.4th at page 1187, the court quoted from the Restatement (3d) Foreign Relations Law of the United States, section 483, comment b, pages. 611 to 612 as follows: "A penal judgment for purposes of this section is a judgment in favor of a foreign state or one of its subdivisions, and primarily punitive rather than compensatory in character. A judgment arising from a fine or penalty is within the section . . . ." (See *Huntington v. Attrill, supra,* 146 U.S. at p. 673 ["The question whether a statute of one State, which in some aspects may be called penal, is a penal law in the international sense, so that it cannot be enforced in the courts of another State, depends upon the question whether its purpose is to punish an offence against the public justice of the State, or to afford a private remedy to a person injured by the wrongful act"]; 2 Beale, A Treatise on the Conflict of Laws (1935) § 421.1, p. 1339 ["Since no recovery is allowable on a penal claim, . . . damages which are *purely* penal will not be given on a foreign cause of action." (Italics added.)]) The court, in interpreting former section 1713.1, which like its successor, section 1715, excluded from enforceability a "judgment for taxes, a fine or other penalty," suggested that factors in determining whether the judgment is for a fine or penalty include whether the judgment is for punishment rather than compensation; the judgment is payable to the state as opposed to a private party; the judgment arose from the penal laws of the country rather than a civil action; the damages were designed to make the defendant an example or punish the defendant; and a mandatory fine, sanction or multiplier was imposed on the defendant. (*Java Oil Ltd. v. Sullivan, supra,* 168 Cal.App.4th at pp. 1186-1189.) All of these factors militate against the conclusion that the Korean judgment here included an unenforceable fine or penalty.

9

Lee's argument distinguishing a tax judgment and penalty or fine is unavailing. Section 1715, subdivision (b) provides that the Act does not apply "to the extent that the judgment is [¶] . . . [¶] (2) A fine or other penalty." Nothing in the Act suggests that judgments for penalties are treated differently than judgments for taxes.

Just because the Korean judgment awards damages to indemnify Hyundai for a penalty it paid, does not mean that the compensatory damages award is itself a penalty. Accordingly, the judgment against Lee for the amount attributed to a fine Hyundai paid is enforceable under the Act.

### E. Postjudgment Interest on Korean Judgment

The Korean judgment awarded postjudgment interest at the rate of 20 percent per annum. Section 1719, subdivision (a) provides that recognition of a foreign-country money judgment has the same conclusive effect as does entry of a sister-state judgment. Upon entry of a sister-state money judgment, that judgment includes the amount of interest accrued on the judgment "computed at the rate of interest applicable to the judgment under the law of the sister state." (§ 1710.25, subd. (a)(2).)[6] Even though the postjudgment interest rate of the foreign country applies to the foreign judgment, Lee argues that such a rate of interest is not enforceable under section 1716, subdivision (c)(3), which states that a court is not required to recognize a foreign judgment that is "repugnant to the public policy of this state or of the United States." Under California law, interest on an unsatisfied judgment now accrues at the rate of 10 percent (§ 685.010, subd. (a)), but can be less if so set by the Legislature (§ 685.010, subd. (b)). Article 15, section 1 of the California Constitution also limits postjudgment interest to 10 percent.

Hyundai argues that whether to recognize the postjudgment interest rate is a matter of discretion, citing *Southern Livestock & Trucking Co. v. Ramon* (5th Cir.1999) 169

---

[6]    To the extent cases such as *Perkins v. Benguet Cons. Min. Co.* (1942) 55 Cal.App.2d 720, 768 might suggest the forum state's postjudgment interest rate applies, those cases are by virtue of the Act obsolete. (See also 2 Beale, A Treatise on the Conflict of Laws, *supra,* § 420.1, p. 1338 ["A foreign judgment, by the prevailing view, bears interest according to the law of the place where it was rendered"].)

10

F.3d 317. In that case, the court held that the public policy against usury did not require nonrecognition under the Texas version of the Uniform Foreign-Money Judgments Recognition Act of a Mexican judgment on a promissory note bearing interest at 48 percent. That rate of interest was based on a contractual agreement. Here, the Korean court imposed the postjudment interest rate of 20 percent "pursuant to the 'Special Law regarding Litigation Acceleration.'" (See *Samyang Food Co., Ltd. v. Pneumatic Scale Corp.* (N.D. Ohio 2005) 2005 U.S. Dist. LEXIS 25374, *5, fn. 2 ["under Korean Law, the 20% rate only became effective after May 31, 2003, Korean Special Law No. 6868"]; *id.* at *4, fn. 1 ["Korea uses a high post-judgment interest rate to encourage payment of judgments"].)

The court in *Java Oil Ltd. v. Sullivan, supra,* 168 Cal.App.4th at page 1189 said, "The standard [for nonrecognition of a foreign-country money judgment] is not simply that the law is contrary to our public policy, but instead that the judgment is so offensive to our public policy as to be ""'prejudicial to recognized standards of morality and to the general interests of the citizens . . . .'"""" The comment to the Uniform Foreign-Country Money Judgment Recognition Act states that the public policy exemption "retains the stringent test for finding a public policy violation applied by the courts interpreting the 1962 Act. Under that test, a difference in law, even a marked one, is not sufficient to raise a public policy issue. Nor is it relevant that the foreign law allows a recovery that the forum state would not allow. Public policy is violated only if recognition or enforcement of the foreign-country judgment would tend clearly to injure public health, the public morals, or the public confidence in the administration of law, or would undermine 'that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel.' Hunt v. BP Exploration Co. (Libya), Ltd*.,* 492 F.Supp. 885, 901 (N.D. Tex. 1980)." (U. Laws Ann., *supra,* at p. 30; see *Ohno v. Yasuma* (9th Cir. 2013) 723 F.3d 984, 1002 ["California courts have set a high bar for repugnancy under the Uniform Act"].)

A postjudgment usury rate does not fit this description of a law repugnant to the public policy of this state. For example, in *Ury v. Jewelers Acceptance Corp.* (1964) 227

11

Cal.App.2d 11, 20, the court said that "California does not have such a strong public policy against any and all contracts which would be usurious if they were made and to be performed here . . . ." The court noted that the California Constitution (now art. 15, § 1) exempts certain institutions from the usury laws and gives the Legislature the right to prescribe maximum limits for exempted lenders. (*Ury v. Jewelers Acceptance Corp., supra,* 227 Cal.App.2d at p. 20.) "A strong public policy, based on a settled concept of justice or morality would not be meshed with such alterable rates as the Legislature might choose to impose." (*Ibid*; see generally Mondora, "*The Public Policy Exception, 'The Freedom of Speech, or of the Press,' and The Uniform Foreign-Country Money Judgments Recognition Act*" (2008) 36 Hofstra L.Rev. 1139, 1164-1168.) [7]

It is true that the California Constitution limits the postjudgment interest rate to 10 percent. But the concept of a higher rate presented by a foreign law does not fit within the stringent test set forth by the Uniform Law for a public policy violation. It is not clear if the trial court exercised discretion in applying the postjudgment interest rate. But Lee has not argued that the trial court failed to exercise its discretion. Instead, he argued that the trial court was legally compelled to reduce the postjudgment interest rate to 10 percent. We reject this contention.

### F.     Postjudgment Interest on California Judgment

Lee contends that the trial court erred in imposing a 20 percent postjudgment interest rate on the California judgment. Lee notes that section 1719, subdivision (b) of the Act provides that a foreign-country money judgment that is recognized is "[e]nforceable in the same manner and to the same extent as a judgment rendered in this state." (See *Manco, supra,* 45 Cal.4th at p. 207.) Hyundai argued that the Korean judgment includes 20 percent postjudgment interest and that judgment should be

---

**7**     But see Shuman, *Enforceability of Foreign Country Money Judgment in California* (2009) 32 Apr. L.A. Law 16, 18 ["Debt collection, for example, may not be repugnant to California policy, but usurious interest as part of such a judgment might be"]. The author might be referring to usurious agreements rather than foreign statutes applicable to postjudgment interest rates.

enforceable in full as entered by the Korean court, even after recognition by the California court. At oral argument, Hyundai conceded that once a California judgment is entered recognizing the Korean judgment, California's postjudgment interest rate of 10 percent should apply to that California judgment. As noted, section 1719 provides that the recognition of a foreign-country money judgment is conclusive between the parties to the same extent as a judgment of a sister-state judgment is entitled to full faith and credit. Section 1710.25 provides that upon entry of a sister-state money judgment, interest shall accrue on the judgment so entered "at the rate of interest applicable to a judgment entered in this state." Thus, a foreign-country money judgment entered in this state bears postjudgment interest at the California rate of 10 percent from the date of the judgment recognizing the foreign judgment.

In *Society of Lloyd's v. Reinhart* (10th Cir. 2005) 402 F.3d 982, 1003-1005, the court held that an English judgment recognized under New Mexico's Uniform Foreign-Money Judgments Recognition Act by a United States District Court became a federal judgment to which the postjudgment interest rate specified in 28 U.S.C. section 1961 applied. According to the court, the federal provision should be applied uniformly. Once a claim is reduced to a judgment, the original claim is extinguished and merged into the new judgment. (*Society of Lloyd's v. Reinhart, supra,* 402 F.3d at p. 1004.) "The U.S. post-judgment rate should apply as of the date of the entry of the judgment in the U.S. district court." (*Id.* at p. 1005.) This reasoning supports our view of California law.

Postjudgment interest on the California judgment is not part of the recognition of the Korean judgment. The Korean judgment is enforceable "in the same manner and to the same extent as a judgment rendered in this state." (§ 1719, subd. (b).) Postjudgment interest on a California judgment is 10 percent and should apply in this case to the California judgment recognizing the Korean judgment.

13

**DISPOSITION**

The judgment is affirmed, in part, and reversed, in part, and remanded for further proceedings in accordance with this opinion.  No costs are awarded.

**CERTIFIED FOR PUBLICATION**


MOSK, ACTING P.J.


We concur:


KRIEGLER, J.


GOODMAN, J.[*]

---

[*]      Judge of the Superior Court of the County of Los Angeles, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.