Filed 3/25/21  Agrobiosol de Mexico etc. v. Agricola EPSA etc. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| AGROBIOSOL DE MEXICO, S.A. DE C.V.,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>AGRICOLA EPSA, S.A. DE C.V.,<br><br>Defendant and Appellant. | D076551<br><br><br>(Super. Ct. No. 37-2017-00026745-CU-MC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Scudi & Ayers, Morgan J.C. Scudi, and J. Ray Ayers for Defendant and Appellant Agricola EPSA, S.A. de C.V.

Higgs Fletcher & Mack, John Morris, and Rachel Moffitt Garrard for Plaintiff and Respondent Agrobiosol de Mexico, S.A. de C.V.


Agrobiosol de Mexico, S.A. de C.V. (Agrobiosol), a Mexican corporation, initiated this action pursuant to California's Uniform Foreign-Country Money Judgments Recognition Act (Recognition Act), Code of Civil Procedure

sections 1713 to 1725,[1] to recognize a judgment issued by a court of Mexico against Agricola EPSA, S.A. de C.V. (EPSA), a Mexican corporation, that included an award of interest at the rate of 5 percent per month. After the parties stipulated to recognition of the Mexican judgment, Agrobiosol filed a motion seeking a determination of the applicable interest rate under which interest would be deemed to have accrued on the judgment under Mexican law. The trial court ruled in favor of Agrobiosol and concluded the relevant foreign interest rate was the 5 percent per month rate set forth in the Mexican judgment. EPSA then moved to set aside the stipulation on the ground it had initiated a collateral attack on the judgment in a court of Mexico that had resulted in issuance of an order temporarily suspending enforcement of the judgment in Mexico. EPSA argued this development undermined the Mexican judgment's eligibility for recognition under the Recognition Act and supported setting aside the stipulation. The trial court denied EPSA's motion, finding EPSA had failed to offer a sufficient justification for waiting to pursue the collateral attack until after entering into the stipulation and receiving an adverse ruling on the relevant foreign interest rate, and entered judgment in the amounts sought by Agrobiosol. On appeal, EPSA challenges the court's rulings on the foreign interest rate motion and motion to withdraw from the stipulation. We affirm.

BACKGROUND

In July of 2013, Agrobiosol sold agricultural goods to EPSA, a grower of produce in Mexico.[2] The resulting debt was evidenced by a promissory note signed by Jose Gonzalo Espinoza Pablos (Espinoza), EPSA's sole officer and

---

[1]   Undesignated statutory references are to the Code of Civil Procedure.

[2]   EPSA contends this transaction was entered into fraudulently and disputes whether the goods were actually delivered.

director, indebting EPSA in the principal amount of $7,406,619 Mexican pesos[3] and calling for interest to accrue at the rate of 5 percent per month (i.e., 60 percent per year) in the event of default.

In August of 2013, Espinoza was terminated by EPSA's majority shareholder, Andrew and Williamson Sales Co. (A&W), a California corporation with offices in San Diego, after A&W determined Espinoza had mismanaged EPSA's finances and purportedly had embezzled funds from EPSA. EPSA was placed into administrative liquidation proceedings in Mexico in late 2013.

A. *The Mexican Judgment*

In October of 2013, Agrobiosol sued EPSA in the First District Court of Culiacan, Sinaloa, Mexico for nonpayment of the promissory note. On June 27, 2014, the district court entered judgment in favor of Agrobiosol in the principal amount of $7,406,619 Mexican pesos (the Mexican judgment). The Mexican judgment included an award of pre- and post-judgment interest at the promissory note default rate of 5 percent per month, with interest to accrue from the default date of September 18, 2013, "until the date when payment is carried out for such amount." EPSA appealed the judgment to an intermediate court of appeal; the appeal was denied on August 29, 2014. EPSA then sought review from Mexico's high court, which denied review on March 31, 2016.

B. *Agrobiosol's Recognition Action*

On July 21, 2017, Agrobiosol filed this action against EPSA in San Diego Superior Court seeking recognition of the Mexican judgment under the Recognition Act, alleging the judgment had become final, conclusive, and

---

[3] EPSA indicates that as of June 16, 2020, when it filed its opening brief on appeal, this sum was the equivalent of approximately $308,000 U.S. dollars.

3

enforceable following denial of review by the Mexican high court.[4] Agrobiosol alleged EPSA's finances had been managed from A&W's San Diego offices and indicated it sought to domesticate the Mexican judgment in California so it could later pursue enforcement of the judgment against A&W.[5] Agrobiosol attached a copy of the Mexican judgment, together with a certified English translation, to the complaint. The Mexican judgment is itself a 21-page document that includes the district court's legal analysis as well as its award of relief.

EPSA responded to Agrobiosol's complaint with a motion asserting a variety of legal challenges that are not relevant to this appeal. This motion was denied on May 18, 2018.

C.    *The Stipulation*

In December of 2018, counsel for Agrobiosol and EPSA entered into a written stipulation titled "Stipulation for Entry of Foreign Judgment and to Reserve Issue of Attorney's Fee, Costs, and Foreign Interest Rate by Noticed Motion." Because the stipulation is significant to this appeal, we set it forth in its entirety. It stated as follows:

"1.    WHEREAS, Plaintiff, judgment creditor, [Agrobiosol], filed its complaint in this matter on July 21, 2017, seeking recognition of its foreign judgment pursuant to California Code of Civil Procedure § 1713, et seq.

---

[4]    Section 1715, subdivision (a) states, in relevant part, "this chapter applies to a foreign-country judgment to the extent that the judgment both: [¶]  (1) Grants or denies recovery of a sum of money.  [¶]  (2) Under the law of the foreign country where rendered, is final, conclusive, and enforceable."

[5]    California courts are authorized to amend judgments to add additional judgment debtors on the theory that the additional party is the alter ego of the original judgment debtor, provided certain requirements are met.  (*NEC Electronics Inc. v. Hurt* (1989) 208 Cal.App.3d 772, 778.)

4

"2.     WHEREAS, Defendant, judgment debtor, [EPSA], in response to the complaint, filed a Demurrer, Motion to Strike and Forum Non Conveniens Motion ('Motions'), which were heard and decided on May 18, 2018.

"3.     WHEREAS, following oral argument and submission of all moving and opposition papers, and evidence submitted by the parties, the court denied all relief sought by Defendant in its motions.

"4.     WHEREAS, the parties agree that the foreign (Mexican) judgment may be recognized and that a California judgment may be entered at this time as to the principal amount of the Mexican judgment, the parties disagree as to the applicable interest rate on the foreign judgment prior to recognition and entry of a California judgment; and whether attorney's fees/costs incurred in connection with the Mexican action may be added to the California judgment.

"5.     In an effort to proceed as efficiently as possible for the benefit of the parties and the court, the parties enter into this stipulation.

"WHEREFORE, THE PARTIES STIPULATE AS FOLLOWS:

"A.     The parties agree and stipulate that Plaintiff's foreign judgment filed and served as Exhibit A to Plaintiff's complaint in this matter, may be, and is to be recognized by the Court, as follows.

"B.     A California judgment recognizing said foreign judgment is to be entered in favor of Plaintiff and against Defendant, in the principal amount of $7,406,619.00 Pesos, currency of Mexico ('Judgment Amount'); plus attorney's fees/costs, if any, in the amount determined by the court at [a] January 25, 2019 hearing.

"C.     The post judgment interest rate on the ensuing California judgment is to be entered at the legal California rate of 10 percent per annum

5

from the date of entry of the California judgment until satisfaction of judgment.

"D.     The interest rate on the foreign judgment to apply prior to recognition and entry of the California judgment is to be determined by noticed motion, which motion date has been reserved by Plaintiff for January 25, 2019, at 10:30 a.m.

"E.     The foreign judgment interest and attorney's fees/costs, if any, as decided by the Court on, or as soon as the matter may be heard, [*sic*] January 25, 2019, is to be added to the California judgment, *nunc pro tunc*, as of August 1, 2018, pursuant to this stipulation.

"F.     The proposed California judgment is attached and submitted herewith by the parties, as Exhibit 1."[6]

D.     *Agrobiosol's Foreign Interest Motion*

On December 28, 2018, pursuant to the stipulation, Agrobiosol filed a motion seeking a determination of the relevant rate at which interest should be deemed to have accumulated on the Mexican judgment (the foreign interest motion). Agrobiosol asserted that the parties had stipulated the Mexican judgment could be recognized, but had disagreed over the relevant foreign interest rate. It argued the governing legal interest rate under Mexican law was the 5 percent monthly rate awarded in the Mexican judgment itself, which, when applied to the principal debt of $7,406,619 Mexican pesos from the default date of September 17, 2013 through the

---

[6]     A partially-executed version of the stipulation signed by counsel for Agrobiosol was filed as part of Agrobiosol's ensuing foreign interest motion. Agrobiosol filed the fully-executed stipulation with its reply brief in support of the foreign interest motion on January 17, 2019.

stipulated end date of August 1, 2018, amounted to a total interest award of $21,659,794.85 Mexican pesos.[7]

EPSA opposed Agrobiosol's foreign interest motion on a number of grounds. EPSA disputed Agrobiosol's characterization of the stipulation and maintained the parties had only agreed to recognition of the judgment principal, not the award of interest. EPSA claimed Agrobiosol had thus failed to meet its burden to prove the interest award met the requirements for recognition. EPSA also argued that the interest award was not expressed as a sum certain as required by section 1715, subdivision (a)(1), and that it was subject to a further "ancillary proceeding" such that it was not final or enforceable as required by section 1715, subdivision (a)(2). EPSA additionally maintained that Agrobiosol was not entitled to prejudgment interest on the Mexican judgment, and it asked the court to refuse to recognize or to reduce the interest award on public policy grounds.

The trial court held a hearing on Agrobiosol's foreign interest motion on January 25, 2019. On January 29, 2019, the trial court issued a minute order granting Agrobiosol's motion. Noting the parties had stipulated it could independently rule on the relevant foreign interest rate, the court granted Agrobiosol's motion insofar as it sought a determination that the relevant foreign interest rate was 5 percent per month, and rejected EPSA's claim that the interest award failed to meet the requirements for recognition.

On February 14, 2019, EPSA filed a motion for reconsideration and clarification of the court's interest rate ruling, which it then replaced with an amended motion for reconsideration and clarification on May 15, 2019.

---

[7]    Agrobiosol also sought to recover its attorney's fees and costs from the underlying litigation. As these requests are not at issue in this appeal, we do not discuss them further.

E.   *EPSA's Motion to Withdraw from the Stipulation*

Also on May 15, 2019, EPSA filed a motion for leave to withdraw from the stipulation.  EPSA maintained that after entering into the stipulation, it had consulted with new Mexican counsel who had filed an amparo proceeding, a form of collateral attack on the Mexican judgment, in a district court of Mexico (the amparo court).  It argued this amparo proceeding, and a resulting amparo court order temporarily suspending enforcement of the Mexican judgment, served as a change in circumstances that justified setting aside the stipulation.  EPSA further asserted that it should be granted relief because its California counsel had entered into the stipulation as a matter of his own excusable neglect, based on his failure to realize EPSA had a remaining basis for challenging the Mexican judgment.

Agrobiosol argued in opposition to EPSA's motion that EPSA's initiation of the amparo proceeding was not truly a new fact or circumstance justifying withdrawal, but instead represented a change in legal strategy designed to avoid the trial court's adverse ruling on the foreign interest motion.  Agrobiosol also disputed EPSA's claim that EPSA could not have discovered the potential basis for a collateral attack on the Mexican judgment before entering into the stipulation.

On June 7, 2019, the trial court issued a minute order denying EPSA's motion for withdrawal from the stipulation, finding EPSA failed to adequately justify its delay in pursuing the amparo proceeding.  In the same order, the court also denied EPSA's motions for reconsideration and clarification.

On June 24, 2019, pursuant to the parties' stipulation, the court entered judgment in favor of Agrobiosol and against EPSA in the total

8

amount of $29,066,413.85 Mexican pesos,[8] plus postjudgment interest at California's legal interest rate.

## DISCUSSION

EPSA challenges the trial court's rulings granting Agrobiosol's foreign interest motion and denying EPSA's motion to withdraw from the stipulation.[9]

A.    *Recognition Act*

Domestic recognition of the judgments of foreign tribunals was historically granted under common law as a matter of comity. (*AO Alfa-Bank v. Yakovlev* (2018) 21 Cal.App.5th 189, 197 (*AO Alfa-Bank*), discussing *Hilton v. Guyot* (1895) 159 U.S. 113.) In 1962, the first uniform code (the 1962 Uniform Act) was promulgated to create clear rules for recognizing foreign-

---

8    Although "a California court, when enforcing a foreign judgment rendered in foreign currency, must ordinarily convert the foreign currency to American dollars using the exchange rate that was in effect at the time of the foreign judgment" (*Pecaflor Constr., Inc. v. Landes* (1988) 198 Cal.App.3d 342, 350), no dispute has been raised on appeal as to the California judgment being denominated in Mexican pesos.

9    In its opening brief, EPSA listed the trial court's denial of its motion for reconsideration as one of its issues on appeal, but then it failed to offer any argument on this issue. Agrobiosol asserts that EPSA has thereby forfeited this challenge. In its reply brief, EPSA appears to dispute Agrobiosol's assertion of forfeiture and seems to attempt an argument about the court's denial of its reconsideration motion. However, EPSA's reply brief argument is deficient, and EPSA furthermore offers no explanation for its failure to present argument on the merits of the court's denial of its reconsideration motion in its opening brief. We conclude that this challenge has been forfeited. (*Stevenson v. City of Sacramento* (2020) 55 Cal.App.5th 545, 555, fn. 6 (*Stevenson*) [failure to raise argument in opening brief, without good cause for doing so, forfeits the argument]; see also *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 ["When an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].)

9

country money judgments. (*AO Alfa-Bank*, at p. 198.) The 1962 Uniform Act was updated in 2005 (the 2005 Uniform Act) to clarify the procedure for seeking recognition of a foreign judgment and to set forth applicable burdens of proof, among other changes. (*AO Alfa-Bank*, at p. 198.) California adopted the 1962 Uniform Act in 1967 and the 2005 Uniform Act in 2007. (*AO Alfa-Bank*, at p. 199, citing *Manco Contracting Co. (W.L.L.) v. Bezdikian* (2008) 45 Cal.4th 192, 195, fn.1 & 198.) The Recognition Act, in its current form, is codified at sections 1713 to 1725. (*AO Alfa-Bank*, at p. 199.) "Although not binding, non-California authorities interpreting the 1962 or 2005 uniform acts [on recognition of foreign money judgments] or applying comity principles have persuasive value." (*Ibid.*, citing § 1722.)

In 2017, the Legislature amended sections 1714, 1716, and 1717. (*AO Alfa-Bank*, *supra*, 21 Cal.App.5th at p. 199, citing Stats. 2017, ch. 168, § 3.) Of these provisions, only section 1716, which sets forth defenses to recognition, is at issue in this appeal. The effective date of the 2017 amendments is January 1, 2018. (See Stats. 2017, ch. 168, § 5.) This court has determined the 2017 amendments apply only prospectively. (*AO Alfa-Bank*, at p. 199.) Accordingly, the former version of section 1716 applies to this case. (See 7 Witkin, Summary of Cal. Law (11th ed. 2017) Constitutional Law § 700, p. 1073 [stating that a statutory amendment that deprives a defendant of an existing defense cannot be applied to a pending action].)

A foreign-country judgment is subject to recognition under the Recognition Act if it both "[g]rants or denies recovery of a sum of money" (§ 1715, subd. (a)(1)), and, "[u]nder the law of the foreign country where rendered, is final, conclusive, and enforceable" (§ 1715, subd. (a)(2)). The party seeking recognition of a foreign judgment has the burden of proving the judgment satisfies these requirements for recognition. (§ 1715, subd. (c).) If

the party seeking recognition meets its burden, the burden then shifts to the party resisting recognition to establish the existence of one of the mandatory or discretionary statutory grounds for nonrecognition in section 1716, former subdivisions (b) and (c).  (§ 1716, former subd. (d), now § 1716, subd. (e).)  The discretionary grounds for nonrecognition under former subdivision (c) of section 1716 include that "[t]he judgment or the cause of action or claim for relief on which the judgment is based is repugnant to the public policy of this state or of the United States."  (§ 1716, former subd. (c)(3), now § 1716, subd. (c)(1)(C).)

"If the court finds that the foreign country money judgment is entitled to recognition in California, it is '[c]onclusive between the parties to the same extent as the judgment of a sister state entitled to full faith and credit in this state would be conclusive,' and '[e]nforceable in the same manner and to the same extent as a judgment rendered in this state.' "  (*AO Alfa-Bank*, *supra*, 21 Cal.App.5th at p. 200, quoting § 1719, subds. (a)-(b).)  In *Hyundai Securities Co., Ltd. v. Lee* (2015) 232 Cal.App.4th 1379 (*Hyundai*), Division Five of the Second District Court of Appeal interpreted section 1719 to mean that the foreign-country judgment, upon entry as a California judgment, will include interest accrued on the foreign judgment according to the law of the foreign country where rendered.  (*Id.* at p. 1390 & fn. 6.)

B.    *Foreign Interest Motion*

1.    *Additional Background*

Agrobiosol's foreign interest motion began with the assertion that the parties had stipulated the Mexican judgment could be recognized but had been unable to agree on the applicable foreign interest rate.  Citing *Hyundai*, *supra*, 232 Cal.App.4th at page 1390, Agrobiosol maintained that the relevant interest rate was to be determined under the law of Mexico, and that

11

the 5 percent monthly rate expressly awarded in the Mexican judgment itself was necessarily the interest rate that applied under Mexican law. In support of its motion, Agrobiosol submitted the declaration of its counsel, Mary Robberson, together with a copy of the stipulation,[10] as well as the declaration of a Mexican attorney who calculated the interest accrued on the Mexican judgment at the 5 percent monthly rate.

EPSA, in opposition, disputed Agrobiosol's interpretation of the stipulation. EPSA claimed the parties had only agreed to recognition of the Mexican judgment principal, not the award of interest. EPSA argued Agrobiosol had thus failed to meet its burden to prove that the interest award met the statutory requirements for recognition. EPSA also argued that the interest component of the Mexican judgment was not final or enforceable because it was subject to a further "ancillary proceeding." It based this position on the declaration of a Mexican attorney, Cesar Humbert Hach Delgado (Hach). Hach averred that the interest award was not final, conclusive, or enforceable, and would not become so until Agrobiosol sought a further court order through an "ancillary procedure."[11] Hach indicated this assertion was based on a part of the Mexican judgment that stated (according to its English translation) that the award of interest of 5 percent per month "shall be quantified for its liquidation during the enforcement of the judgment, by way of ancillary procedure because the amount is not claimed as a liquidated amount."

In addition to challenging the finality and enforceability of the interest award, EPSA also argued the interest award was not expressed as a sum

---

10    See footnote 6, *ante.*

11    Hach did not explain the nature of this ancillary proceeding, what it would entail, or how it stood to alter the resulting interest award, if at all.

certain and thus could not be recognized under section 1715, subdivision (a)(1), which permits recognition only of foreign judgments that grant or deny "recovery of a sum of money." EPSA additionally disputed whether the trial court had authority to include pre-judgment interest in the domesticated judgment, and argued that the court should exercise its discretion to reduce the interest rate on public policy grounds, both because the rate was excessive and because, according to EPSA, the underlying promissory note was tainted by fraud.

In its reply brief, Agrobiosol maintained that the parties had, in fact, stipulated that the Mexican judgment could be recognized, and had agreed the domesticated judgment would include interest in some amount. Agrobiosol further maintained the parties' only dispute was over the relevant foreign interest rate, not whether interest would be included in the domesticated judgment at all. Agrobiosol argued that EPSA was estopped from taking, or had waived the right to take, a position that contradicted the parties' stipulation. Agrobiosol also asserted that the Mexican judgment's reference to liquidating interest in an ancillary proceeding should be taken to mean that the amount of interest would need to be calculated, not that the interest rate was subject to further alteration.

During the hearing on the foreign interest motion, the attorneys continued to take opposing views of the stipulation.[12] EPSA's counsel claimed "[t]he stipulation was only as to the principal with the other issues left for the court's determination," and Agrobiosol's counsel asserted "[w]e stipulated that the judgment is final. [. . .] [A]t no time has there been any question that the judgment is final."

On January 29, 2019, the trial court issued a minute order ruling that the relevant interest rate applicable to the Mexican judgment was 5 percent per month. The court indicated the parties had agreed it could independently rule on the relevant foreign interest rate and that it was issuing its opinion "based on the parties['] stipulation." Noting that under *Hyundai*, *supra*, 232 Cal.App.4th at page 1390, the interest rate to be applied in determining accrued interest on the Mexican judgment was the rate that "would apply in Mexico," the court found that "[c]ontrary to [EPSA's] argument, the Court does not find that the judgment at issue requires further proceedings in Mexico to determine the rate or the amount of the interest. There is no mention of a hearing on the merits as to whether or not the 5 percent monthly interest rate should be awarded, since it is expressly awarded on the face of the Mexican judgment."

---

[12] At the hearing on the foreign interest motion, EPSA's counsel stated he intended to submit a supplemental declaration from a Mexican attorney that he claimed would provide further support for EPSA's position that the interest award was not final. Agrobiosol's counsel objected that she had not had the opportunity to review or respond to the declaration and asked that it not be included in the record, to which the court responded, "[o]kay." The declaration does not appear in the relevant part of the record. Although the trial court did not clearly state it was sustaining the objection of Agrobiosol's counsel, the presumption of regularity applies to lower court proceedings (*In re Elizabeth M.* (2008) 158 Cal.App.4th 1551, 1556), and we infer from the absence of the declaration in the appropriate part of the record that counsel's objection was sustained.

### 2.    *Standard of Review*

Questions of law regarding the application and requirements of the Recognition Act are reviewed de novo.  (*Hyundai Securities Co., Ltd. v. Lee* (2013) 215 Cal.App.4th 682, 688.)  A determination whether to recognize an element of a foreign-country judgment under the public policy provision of former section 1716, subdivision (c)(3), is reviewed for an abuse of discretion. (*Hyundai, supra*, 232 Cal.App.4th at p. 1385.)

### 3.    *Analysis*

#### a.    *The Interest Award Was Sufficiently Certain*

EPSA claims the interest award in the Mexican judgment did not qualify as a "sum of money" as required by subdivision (a)(1) of section 1715, because it was expressed as a percentage of the judgment principal rather than as an amount of currency.  (See § 1715, subd. (a)(1) [providing that the Recognition Act applies to a foreign-country judgment that "[g]rants or denies recovery of a sum of money"].)  EPSA's contention is substantially undermined, however, by the Restatement Second of Conflict of Laws, section 108, subdivision (b), which states:  "*Interest*.  A judgment for a specified sum together with interest from a given date is sufficiently certain if the rate of interest is fixed either by the judgment or by some local law rule of the state of rendition."  (See also *North Carolina Nat'l Bank v. Marden* (W.D.N.C. 1983) 561 F.Supp. 698, 699 [relying on section 108, subdivision (b) of the Restatement Second of Conflict of Laws to hold that an award of interest at 2.5 percent above the plaintiff bank's prime interest rate was not uncertain so as to be unenforceable].)

EPSA relies on three decisions for the proposition that the interest award was not expressed in sufficiently certain terms:  *Farrow Mortgage Services Pty. v. Singh* (Mass. Super. Ct., Mar. 30, 1995, No. CA 937171.) 1995

15

WL 809561, 1995 Mass. Super. LEXIS 495 (*Farrow*), *Bianchi v. Savino Del Bene International Freight Forwarders* (App. Ct. Ill. 2002) 770 N.E.2d 684 (*Bianchi*), and *Nicor International Corporation v. El Paso Corporation* (S.D. Fla. 2003) 292 F.Supp.2d 1357 (*Nicor*). However, while each of these out-of-state cases was decided under its respective state's enactment of the 1962 Uniform Act, none of them involved an award of interest expressed as a percentage of the principal debt. Rather, each dealt with an award that was not reduced to numerical terms of any sort. (See *Farrow*, 1995 WL 809561 at p. *4, 1995 Mass. Super. LEXIS at p. *11 [declining to recognize cost award in judgment that awarded principal "plus costs" in an unstated amount]; *Bianchi*, at p. 697 [judgment awarding "back wages" without specifying a wage or salary figure did not grant recovery of a sum of money]; *Nicor*, at p. 1365 [holding a foreign judgment that found a debtor liable for damages in an unstated amount failed to award a sum of money].) Thus, none of EPSA's cited authorities offer persuasive support for the conclusion that the interest component of the Mexican judgment was expressed with insufficient certainty. Accordingly, we reject EPSA's first claim of error.

> b.    *The Court Did Not Contravene Section 1715, Subdivision (a)(2)*

Next, EPSA argues the trial court erred in granting Agrobiosol's foreign interest motion. EPSA contends a judgment may be final as to some matters, but not others. It further maintains that Agrobiosol failed to present evidence that the interest component of the Mexican judgment was final, conclusive, or enforceable, whereas EPSA did present evidence the interest award would not become final or enforceable until after a further ancillary

16

proceeding.[13] Thus, EPSA contends, the court's ruling on the foreign interest motion was unsupported by evidence that the interest award met the requirements for recognition under section 1715, subdivision (a)(2).

Agrobiosol responds that the stipulation, by its express terms, amounted to an agreement that the Mexican judgment in its entirety was final and enforceable and met the requirements for recognition. In its reply brief, EPSA disputes Agrobiosol's contention. EPSA notes that the stipulation did not expressly state that the interest component of the Mexican judgment could be recognized. It further maintains that the language of the stipulation should be interpreted to mean the parties agreed to recognition only of the judgment principal, not the award of interest.

We conclude the court did not err. The parties stipulated that the Mexican judgment was to be recognized by the court, and the court was entitled to rely on the stipulation in ruling on the motion.

Whether the interest component of the Mexican judgment was final, conclusive, and enforceable under the law of Mexico presented a question of foreign law. Issues of foreign law are established by request for judicial notice. (Evid. Code, §§ 310, 452, subd. (f).) A court may rely on the written opinion of an expert to determine a question of foreign law. (Evid. Code, § 454, subd. (b).) Here, in disputing whether the interest component of the

---

[13] In an effort to demonstrate error, EPSA cites evidence and provisions of Mexican law that it submitted in support of its reconsideration motion, after the trial court had already ruled on the foreign interest motion. One of the general principles of appellate law is that we review "only those matters which were before the court when it made its decision." (*Ramis v. Superior Court* (1977) 74 Cal.App.3d 325, 332 (*Ramis*).) Because the trial court did not have the benefit of these materials when it ruled on the foreign interest motion, we do not consider them in determining whether the court's decision was erroneous. As discussed in footnote 14, *post*, EPSA filed a belated request for judicial notice of these and other materials, which we deny.

17

Mexican judgment met the requirements for recognition, EPSA relied on the declaration of Hach,[14] and Agrobiosol relied on the stipulation. " 'A stipulation, although it is not itself evidence, is the equivalent of, and may be relied on as, proof.' " (*Harris v. Spinali Auto Sales, Inc.* (1966) 240 Cal.App.2d 447, 452-453 (*Harris*).) "A stipulated judgment is as conclusive as

[14] On February 16, 2021, almost six months after appellate briefs were filed and less than three weeks before the date set for oral argument, EPSA filed a motion requesting judicial notice of numerous materials: a declaration and attached exhibits filed in support of EPSA's motion challenging the complaint, which is not at issue on appeal; the Hach declaration and attached exhibits (an application filed in a court of Mexico and provisions of Mexican law relating to attorney's fees and costs), two copies of which were filed in opposition to Agrobiosol's foreign interest motion; two declarations and attached exhibits (an application filed in a court of Mexico, a decision of an appellate court of Mexico, and attached provisions of Mexican law) that were filed after the trial court ruled on the foreign interest motion (see footnote 13, *ante*); the declaration of a Mexican attorney, Javier Fernando Tarin Robles (Tarin), and attached exhibit (an order of a court of Mexico), that EPSA filed in support of its motion to withdraw from the stipulation; and a judgment entered on July 23, 2019, in favor of A&W and against Espinoza and others in a related and coordinated matter pending in San Diego Superior Court, case No. 37-2013-00077045-CU-OR-CTL, as well as a minute order entered in the same action on May 3, 2019. "An appellate court may properly decline to take judicial notice under Evidence Code sections 452 and 459 of a matter which should have been presented to the trial court for its consideration in the first instance." (*Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325-326; see also *People v. Preslie* (1977) 70 Cal.App.3d 486, 494 [it is "desirable in the interest of orderly judicial procedure that [a request for judicial notice] be made well before" the briefing stage]; accord, *City of Oakland v. Hassey* (2008) 163 Cal.App.4th 1477, 1488, fn. 5.) We deny the motion. It is unduly belated, is unsupported by any indication judicial notice was first sought in the trial court, and with the exception of the Hach and Tarin declarations, it seeks judicial notice of matters that are irrelevant or that were not before the trial court when it issued the decisions challenged on appeal. Although we deny EPSA's request for judicial notice, we have considered the Hach and Tarin declarations and their respective exhibits as materials included in the appellate record that were before the trial court when it decided the motions at issue on appeal.

18

to the matters in issue it determines as a judgment after trial." (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1507.) "Ordinarily, a party will not be permitted to contradict a stipulation, even though it may be opposed to otherwise provable fact, and even though the stipulation affects the statutory and constitutional rights of the parties." (*Harris*, at p. 453.) Although the court did not expressly state it was relying on the stipulation to support its conclusion that the interest component of the Mexican judgment met the requirements for recognition under section 1715, subdivision (a)(2), we presume that it did. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*) [" 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. "[I]f any matters could have been presented to the court below which would have authorized the order complained of, it will be presumed that such matters were presented." ' "].)

There is no dispute that the stipulation amounted to a mutual agreement that the requirements for recognition were met as to at least some part of the Mexican judgment. While EPSA urges its concession only applied to the judgment principal, not the award of interest, the trial court impliedly rejected EPSA's position and interpreted the stipulation in Agrobiosol's favor.

This interpretation of the stipulation was not erroneous. " 'A stipulation is a contract . . ., and is sometimes said to be governed by the usual rules of construction of other contracts.' " (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632 (*Winograd*)].) A contract must be interpreted as a whole (Civ. Code, § 1641), so as to give effect to the mutual intent of the parties (Civ. Code, § 1636). The terms of a stipulation, like any agreement, "are determined by objective rather than by subjective criteria. The question is what the parties' objective manifestations of

19

agreement or objective expressions of intent would lead a reasonable person to believe." (*Winograd*, at p. 632.) " 'The parties' undisclosed intent or understanding is irrelevant to contract interpretation.' [Citation.]" (*Cedars-Sinai Medical Center v. Shewry* (2006) 137 Cal.App.4th 964, 980 (*Cedars-Sinai*).)

The language of the stipulation supports the view that the parties had agreed the Mexican judgment in its entirety was eligible for recognition. The stipulation referred to recognition of the Mexican judgment as a whole instrument, not as to any particular part ("the foreign (Mexican) judgment may be recognized . . ."; the parties "agree and stipulate that Plaintiff's foreign judgment filed and served as Exhibit A to Plaintiff's complaint in this matter, may be, and is to be recognized by the Court . . . ."). Had the parties meant to agree that only certain components of the Mexican judgment could be recognized, they could have done so using clear and express language to that effect; they did not. And while the stipulation recited that the parties disagreed over "the applicable interest rate," a disagreement over the correct interest rate is distinct from a dispute over whether interest was available at all. The latter provision did not clearly and expressly carve out the interest award from recognition. The parties' stated agreement that a judgment could be entered "at this time" as to the principal amount of the Mexican judgment was consistent with the absence of a present dispute as to this sum, and did not expressly limit the scope of recognition. Moreover, the parties' agreement to a summary proceeding followed by immediate entry of judgment tended to indicate the scope of their remaining disputes was narrow and capable of prompt resolution, which is inconsistent with the view that the ensuing litigation over the interest component of the judgment would remain effectively unlimited by the stipulation.

In its reply brief, EPSA points to the fact that after the parties entered into the stipulation, it filed an opposition brief in which it denied having agreed to recognition of the interest award. Indeed, both parties took opposing views of their agreement as evidenced by their respective briefs and their counsels' arguments during the hearing.[15] This conflict in the parties' conduct and representations to the court amounted to a conflict in the extrinsic evidence of the parties' understanding of the stipulation. "Whether the contract is reasonably susceptible to a party's interpretation can be determined from the language of the contract itself or from extrinsic evidence of the parties' intent. [Citation.] Extrinsic evidence can include the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties." (*Cedars-Sinai*, *supra*, 137 Cal.App.4th at p. 980.) "When the competent extrinsic evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction will be upheld if it is supported by substantial evidence." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955-956.) The trial court impliedly resolved this conflict in favor of Agrobiosol. Because the court's resolution of this issue was supported by substantial evidence and resulted in a reasonable construction of the stipulation, we will not disturb it.

Accordingly, we reject EPSA's claim that the trial court's resolution of the foreign interest motion was unsupported by evidence that the interest

---

15     In its response brief, Agrobiosol quotes extensively from statements made by EPSA's counsel during the hearing on EPSA's motion to withdraw from the stipulation. Because the quoted statements were not before the trial court when it ruled on Agrobiosol's foreign interest motion, we disregard them. (*Ramis*, *supra*, 74 Cal.App.3d at p. 332.)

21

component of the Mexican judgment satisfied the requirements for recognition under section 1715, subdivision (a)(2).

c.  *The Trial Court Did Not Err By Failing to Exclude Pre-Judgment Interest on the Mexican Judgment*

Next, EPSA argues the trial court erred by awarding Agrobiosol the entirety of the interest award in the Mexican judgment, including prejudgment interest, which EPSA claims was not legally authorized. EPSA quotes a passage from *Hyundai, supra,* 232 Cal.App.4th 1379, in which the court reasoned that "[s]ection 1719, subdivision (a) provides that recognition of a foreign-country money judgment has the same conclusive effect as does entry of a sister state judgment" and that "[u]pon entry of a sister state money judgment, that judgment includes the amount of interest accrued on the judgment 'computed at the rate of interest applicable to the judgment under the law of the sister state.' " (*Hyundai,* at p. 1390, quoting § 1710.25, subd. (a)(2).) EPSA contends that notwithstanding this broad language, because the *Hyundai* court was only confronted with a foreign award of postjudgment interest, the quoted passage is dicta when applied to an award of foreign prejudgment interest. EPSA argues the trial court in this case therefore had no authority to recognize the prejudgment component of the interest award.

We reject EPSA's argument. First, while the factual scenario presented in *Hyundai* was limited to a foreign judgment award of postjudgment interest, the statutory authorities the court relied on nevertheless apply equally to a foreign judgment award of prejudgment interest. In *Hyundai,* the appellate court reasoned that under section 1719, subdivision (a), recognition of a foreign country judgment will have the same conclusive effect as entry of a sister state judgment. (*Hyundai, supra,* 232 Cal.App.4th at p. 1390.) The court further reasoned that entry of a sister state judgment is

22

governed by section 1710.25, which states, at subdivision (a)(2), that a California judgment based on a sister state judgment will include "the amount of interest accrued on the sister state judgment 'computed at the rate of interest applicable to the judgment under the law of the sister state.' " (*Hyundai*, at p. 1390.) Section 1710.25, subdivision (a)(2), does not impose limits on the period of accrual of interest, nor does it prohibit inclusion of a sister-state's prejudgment interest award upon entry as a California judgment, provided prejudgment interest is available under the law of the sister state and awarded in the sister-state judgment. Moreover, full recognition under section 1719, subdivision (a), of a foreign judgment that awards prejudgment interest requires recognition of the prejudgment component of the interest award. (See *Ingersoll Milling Machine Co. v. Granger* (7th Cir. 1987) 833 F.2d 680, 691 [holding Illinois would recognize a Belgian judgment award of prejudgment interest under its version of the 1962 Uniform Act, and specifically under the statutory provision that " '[t]he foreign judgment is enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit,' " because "[t]he Belgian judgment includes prejudgment interest. Full recognition and enforcement of that judgment includes an award of prejudgment interest."].)

Accordingly, we reject EPSA's claim that the trial court erred by awarding Agrobiosol prejudgment interest on the Mexican judgment.

> d. *EPSA Fails to Establish the Trial Court Abused Its Discretion in Considering EPSA's Public Policy Defense*

EPSA's final challenge to the trial court's interest rate ruling relates to the public policy defense to recognition of a foreign judgment. EPSA cites *Hyundai*, *supra*, 232 Cal.App.4th at pages 1385 and 1390 to 1392, in which the court held that a foreign postjudgment interest rate of 20 percent per

23

year did not meet the high bar for repugnancy to California public policy under former section 1716, subdivision (c)(3).[16] (*Hyundai*, at p. 1391.) In reaching this conclusion, the court emphasized that the debtor "ha[d] not argued that the trial court failed to exercise its discretion or abused its discretion. Instead, he argued that the trial court was legally compelled to reduce the postjudgment interest rate to [the California legal rate of] 10 percent. We reject this contention." (*Id.* at pp. 1391-1392.)

EPSA claims the quoted passage of the *Hyundai* decision demonstrates that the trial court in this case possessed discretion to reduce or decline to enforce the interest award in the Mexican judgment on public policy grounds. EPSA maintains that the trial court failed to discuss EPSA's public policy defense during the motion hearing or in its minute order. EPSA claims the court's failure to explicitly address its request to reduce or refuse to enforce the interest award on public policy grounds indicates the court was unaware it had such discretion, and that it therefore failed to exercise its discretion. EPSA asserts that it "does not contend that the Trial Court was compelled to reduce the interest rate" but "[r]ather, [its] position is that the Trial Court erred in failing to even consider whether it had discretion to reduce the interest rate based on public policy."

EPSA fails to demonstrate reversible error. As the appealing party, it is EPSA's burden to establish that the trial court abused its discretion. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) EPSA presumes from the court's silence that there was such an abuse. We, however, presume the

---

16    Section 1716, former subdivision (c)(3), provided that "[a] court of this state is not required to recognize a foreign-country judgment if . . . [¶] [t]he judgment or the cause of action or claim for relief on which the judgment is based is repugnant to the public policy of this state or of the United States." (Stats. 2007, ch. 212, § 2.)

opposite. " 'A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*); *Jameson, supra*, 5 Cal.5th at pp. 608-609.) In its reply brief, apparently seeking to dispel this presumption, EPSA claims it sought a statement of decision on this issue and suggests the court erred in not providing one. However, statements of decision are not required on the grant or denial of a motion. (§ 632 [statements of decision may be requested following a court trial]; *Lavine v. Hospital of the Good Samaritan* (1985) 169 Cal.App.3d 1019, 1026 [statement of decision "neither required nor available upon decision of a motion"].) Moreover, a review of the record reveals EPSA's request for a statement of decision was made within a brief EPSA filed in support of its amended motion for reconsideration some three and a half months after the trial court issued its interest rate ruling. This request did not comply with section 632. (§ 632 [statement must be requested within 10 days after the court announces a tentative decision].) Accordingly, we reject EPSA's assertion of error.

    C.    *EPSA's Motion to Withdraw from the Stipulation*

        1.    *Additional Background*

EPSA moved to withdraw from the stipulation under section 473, subdivision (b), on the basis that it had filed a collateral attack on the constitutionality of the Mexican judgment in Mexico. In support of this motion, EPSA presented the declaration of its Mexican counsel, Javier Fernando Tarin Robles (Tarin). Tarin indicated that on March 5, 2019, EPSA had initiated an amparo proceeding in a district court of Mexico challenging

25

the constitutionality of the Mexican judgment. He explained that an amparo proceeding is a form of collateral attack available to redress a violation of rights under the Mexican Federal Constitution. According to Tarin, EPSA alleged in its amparo proceeding that its due process rights had been violated during the litigation that resulted in the Mexican judgment. The asserted due process violation was that Espinoza, EPSA's former director, had appeared at an evidentiary hearing and had ratified the promissory note on EPSA's behalf at a time when he had already been dismissed by EPSA and lacked authority to act for EPSA. If successful, Tarin indicated, the amparo proceeding would have the effect of vacating the Mexican judgment and reinstating the underlying litigation at the point preceding the alleged due process violation. Tarin further averred that at EPSA's request, on March 13, 2019, the amparo court had issued an order suspending enforcement of the Mexican judgment pending resolution of the amparo proceeding on the merits.

EPSA argued its initiation of the amparo proceeding, and the amparo court's issuance of the stay order, rendered the Mexican judgment at least temporarily nonfinal and unenforceable, which it claimed was a new fact or circumstance that warranted setting aside the stipulation.

EPSA also sought to withdraw from the stipulation on the ground that its California counsel had entered into the stipulation as the result of excusable mistake or neglect. On the latter point, EPSA submitted the declaration of its California counsel, J. Ray Ayers, who stated that he had entered into the stipulation in the interest of stopping the accrual of interest on the Mexican judgment at 60 percent per year. He further indicated that before signing the stipulation, he had consulted with EPSA's Mexican litigation counsel and had understood the Mexican judgment had become

final after appeal, which at the time was, in fact, true. Ayers claimed that at the time he signed the stipulation, he had no knowledge there was any basis for asserting a collateral attack on the Mexican judgment, and "[e]ven if [he] did have access to the file, it is in Spanish, and [he] is not a Mexican law specialist." It was not until the Mexican litigation file was reviewed by "new counsel in Mexico" that it was determined EPSA had a basis for filing an amparo proceeding. Ayers stated he reasonably could not have anticipated this development.

In opposition, Agrobiosol argued EPSA failed to offer a sufficient justification for setting aside the stipulation. It maintained EPSA's explanation for its delay in pursuing the amparo proceeding was deficient, given that the Mexican judgment had reached finality in 2016 following a full exercise of EPSA's appellate rights, and that Agrobiosol's recognition action had been pending since 2017. Agrobiosol argued the timing of EPSA's decision to pursue the amparo suggested EPSA was employing the amparo proceeding as a strategic move to avoid the trial court's ruling on the foreign interest rate motion, and that EPSA's change in legal strategy did not justify releasing it from the stipulation.

Agrobiosol also disputed EPSA's claim that Ayers could not have known sooner that there might be a basis for asserting a collateral attack on the Mexican judgment. Agrobiosol identified several Mexican lawyers for EPSA with whom it claimed Ayers could have consulted before signing the stipulation. Two of these attorneys had represented EPSA in legal matters in Mexico, and one was a licensed Mexican attorney associated with Ayers' own law firm. Agrobiosol argued EPSA had thus failed to identify a legitimate reason it could not have consulted with appropriate Mexican counsel, or filed the amparo proceeding, before entering into the stipulation.

During the hearing on EPSA's motion, the trial court expressed its disinclination to accept EPSA's characterization of the amparo proceeding and resulting stay order as matters outside EPSA's control. The court stated it viewed EPSA's initiation of the amparo proceeding as "volitional behavior on [EPSA's] part," and that the proceeding and resulting order "were a direct consequence of . . . a volitional choice [EPSA] made to pursue a different legal strategy after the fact."

In its subsequent minute order denying EPSA's motion, the trial court acknowledged that EPSA was seeking relief from the stipulation based on the amparo proceeding and amparo court order, by virtue of which the Mexican judgment had become at least temporarily nonfinal and unenforceable. The court found, however, that this development was not sufficient to justify releasing EPSA from the stipulation. The court reasoned that under *Harris*, *supra*, 240 Cal.App.2d at page 454, a stipulation can be set aside based on a party's mistake, but "in order to warrant relief . . . the mistake must be one which could not have been avoided by the exercise of ordinary care[,]" and "[w]hen there is no mistake but merely a lack of full knowledge of the facts, which . . . is due to the failure of a party to exercise due diligence to ascertain them, there is no proper ground for relief." The court found that while EPSA "argues that the Stipulation should now be set aside based on changed facts and circumstance[s], i.e., the filing of the Amparo," "it is EPSA's argument and strategy that has changed - not the facts or circumstances. There has been no showing of mistake to support overruling the clear agreement . . . of the parties." The court thus denied the motion.

2. *Standard of Review*

"[A] motion to be relieved from a stipulation is addressed to the sound discretion of the trial court, and the trial court's ruling will not be interfered

28

with unless it is apparent that the court has abused its discretion." (*Baker v. Ramirez* (1987) 190 Cal.App.3d 1123, 1135.) " 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " (*Denham*, *supra*, 2 Cal.3d at p. 566, quoting *Loomis v. Loomis* (1960) 181 Cal.App.2d 345, 348-349.) Stated differently, an action that " 'transgresses the confines of the applicable principles of law' " is an abuse of discretion. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.)

Appellate review of a motion to set aside an agreement that results in a stipulated judgment is additionally governed by policies "favoring enforcement of a private bargain, [and] dispute resolution by agreement of the parties . . . ." (*Philippine Exp. & Foreign Loan Guar. Corp. v. Chuidian* (1990) 218 Cal.App.3d 1058, 1076 (*Philippine Export*).) A party seeking to overturn a trial court order denying relief from such an agreement bears a "heavy burden" because the "relevant legal policies favor enforcing the parties' bargain, settling the lawsuit, and affirming the judgment of the trial court." (*Ibid.*)

   3. *Analysis*

EPSA argues the trial court erred in refusing to allow it to withdraw from the stipulation. It contends the court wrongfully construed its motion as based only on the filing of the amparo proceeding, which did not affect the Mexican judgment's eligibility for recognition, when the more salient new circumstance was the amparo order itself, which did. Because the issuance of

29

the amparo order materially altered the status of the Mexican judgment, EPSA argues, the court abused its discretion in refusing to grant relief.

Agrobiosol responds that to justify setting aside the stipulation, it was not sufficient for EPSA to identify a change in circumstances. Rather, under the relevant authorities, EPSA was required to establish its absence of fault in failing to pursue the amparo proceeding before it entered into the stipulation. Agrobiosol contends that EPSA's failure to make a sufficient showing of diligence or excusable neglect justified the court's denial of relief.

We conclude that EPSA fails to demonstrate that the trial court strayed from the relevant legal principles that govern a motion to set aside a stipulation. "A stipulation is conclusive with respect to the matters covered by it, unless the court, for good cause shown, later permits its abandonment or withdrawal." (*Harris*, *supra*, 240 Cal.App.2d at p. 452.) A court may, in its discretion, "set aside a stipulation entered into through inadvertence, excusable neglect, fraud, misrepresentation, mistake of fact, or law, when the facts stipulated have changed, [or there has] been a change in the underlying conditions that could not have been anticipated, or where special circumstances exist rendering it unjust to enforce the stipulation." (3 Cal.Jur.3d (2014) Agreed Case and Stipulations, § 43, pp. 58-59; accord *Huston v. Workers' Compensation Appeals Board* (1979) 95 Cal.App.3d 856, 865-866; *People v. Trujillo* (1977) 67 Cal.App.3d 547, 555.) "Likewise, it is generally recognized that relief may be had from a stipulation where there has been a change in conditions or unforeseen developments which would render its enforcement inequitable provided that there has been diligence in discovering the facts relative to the disputed matter . . . ." (3 Cal.Jur.3d, *supra*, § 43, at p. 59.) Thus, even where there has been a change in circumstances, a party may properly be denied permission to withdraw from

a stipulation where it fails to make an adequate showing of diligence. As this court stated in *Harris*, *supra*, 240 Cal.App.2d at page 454, courts may set aside stipulations "where a mistake of fact is clearly shown," provided the mistake is "one which could not have been avoided by the exercise of ordinary care," but "[w]hen there is no mistake but merely a lack of full knowledge of the facts, which, as here, is due to the failure of the party to ascertain them, there is no proper ground for relief."

The facts of *Harris* are instructive. In *Harris*, on the second day of trial, all parties and attorneys entered into a settlement in open court after protracted negotiations. (*Harris*, *supra*, 240 Cal.App.2d at p. 451.) Harris later sought to avoid the agreement by claiming he was mistaken about the value of assets he had agreed to accept as part of the settlement, and in particular that he was "not aware of what the books disclosed" other than what he had been told by others. (*Id.* at p. 454.) The trial court denied relief and entered judgment based on the stipulation, and this court affirmed. We characterized Harris as seeking "to prove . . . that he did not know exactly what the assets of the corporation were at the time of the stipulation" (*Ibid.*) and concluded this showing failed to justify relief because there had been "no mistake but merely a lack of full knowledge of the facts" that was "due to the failure of [Harris] to ascertain them . . . ." (*Ibid.*)

In its opening brief on appeal, EPSA ignores this diligence requirement and instead maintains that the amparo order was a development of such significance that the trial court was effectively constrained to set the stipulation aside. A foreign country judgment must meet all three requirements of finality, conclusiveness, and enforceability, to be eligible for recognition under the Recognition Act. (See § 1715, subd. (a)(2) [stating a foreign judgment is subject to recognition if it is "final, conclusive, *and*

31

enforceable"], italics added; *Mayekawa Manufacturing Co. v. Sasaki* (1995) 76 Wn.App. 791, 799-800 [holding, under Washington's version of the 1962 Uniform Act, that a Japanese money judgment to which an objection had been lodged could not be recognized, because although it was preliminarily enforceable, it was not final or conclusive under Japanese law].) Because the amparo order had the effect of rendering the Mexican judgment at least temporarily unenforceable, EPSA maintains, the Mexican judgment no longer qualified for recognition under subdivision (a)(2) of section 1715. There was no dispute below, nor does there appear to be any dispute on appeal, that the amparo order had the effect of undermining the eligibility of the Mexican judgment for recognition. EPSA's position is that this development effectively required the trial court to release it from the stipulation.

However, EPSA's appellate briefs are devoid of citations to legal authority establishing that a trial court is constrained to exercise its discretion to permit a party to withdraw from a stipulation based solely on the significance of an asserted new development. To the contrary, reviewing courts have upheld stipulations against objections that doing so creates an anomalous or unfair result. (See, e.g., *People v. Castillo* (2010) 49 Cal.4th 145, 173 [holding the Attorney General was judicially estopped from disavowing a stipulation calling for imposition of a two-year term of civil commitment of a sexually violent predator notwithstanding a change in intervening law (The Sexual Punishment and Control Act: Jessica's law, Proposition 83) that called for sexually violent predators to be committed indefinitely, even though "a stipulation similar to the one we consider in the present case now could not properly be negotiated, entered into, and enforced"]; *Leonard v. City of Los Angeles* (1973) 31 Cal.App.3d 473, 475-479 [holding a criminal defendant's stipulation that an arrest was made with

32

probable cause bound a different trial court in a subsequent tort action filed by the defendant, notwithstanding that the second trial court determined the officers acted without probable cause].)  Indeed, some degree of disparity between a stipulation and current circumstances undoubtedly results whenever a party seeking to withdraw on the basis of a new development is denied relief.  Nevertheless, whether to permit withdrawal from a stipulation remains a matter for the trial court's discretion, and courts are authorized to exercise their discretionary authority to deny relief to parties that fail to make a sufficient showing of diligence.

EPSA thus fails to establish that the trial court erred in relying on *Harris* and requiring EPSA to demonstrate its absence of fault in failing to pursue the amparo proceeding sooner.  In its reply brief, EPSA acknowledges that relief from a stipulation is appropriate "where the fault does not lie with the client. . . ."  It claims, however, that it did make such a showing.  Specifically, it contends that the declaration of its California counsel established that he could not have been expected to know the amparo procedure was "even available" and that EPSA "proceeded promptly" with the amparo once it became aware it had grounds for a collateral attack.

By failing to address this point in its opening brief, EPSA has arguably forfeited it.  (*Stevenson, supra,* 55 Cal.App.5th at p. 555, fn. 6.)  And even if not forfeited, EPSA's argument lacks merit.  "To determine whether the mistake or neglect was excusable, '. . . the court inquires whether "a reasonably prudent person under the same or similar circumstances" might have made the same error . . . .' " (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 681-682 (*Garcia*).)  As this question is primarily factual, our review is for substantial evidence.  (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462.)  Moreover, to the extent we discern "any

33

factual conflicts in the evidence . . . [they] must be resolved in favor of the prevailing party below." (*Philippine Export*, *supra*, 218 Cal.App.3d at p. 1077.)

Having reviewed the record, we conclude substantial evidence supported the trial court's determination that EPSA failed to establish that its delay was attributable to excusable mistake or neglect. While EPSA contends neither it nor Ayers could have known of the existence of the amparo procedure, including because the litigation file was "in Spanish" and Ayers was "not a Mexican law specialist," Agrobiosol presented evidence of several Mexican attorneys already representing EPSA who were assertedly potential sources of this information. The trial court could properly infer from Agrobiosol's evidence that Ayers could have, and in the exercise of reasonable diligence should have, learned of the availability of the amparo procedure before entering into the stipulation.

Moreover, wholly absent from Ayers's declaration was any explanation why, if EPSA was going to consult with new Mexican counsel about possible legal grounds for attacking the Mexican judgment, it did not do so before entering into the stipulation. Ayers did not indicate he lacked his client's authority to enter into the stipulation. EPSA's evidence failed to address why it waited to seek an opinion about its legal options for challenging the Mexican judgment until after it entered into the stipulation and after the trial court ruled on the foreign interest motion. EPSA's evidence thus fell short of establishing that it acted with reasonable diligence in pursuing its legal rights in Mexico. (*Garcia*, *supra*, 58 Cal.App.4th at pp. 681-682.) Accordingly, the trial court did not err in determining that EPSA failed to demonstrate excusable mistake or neglect in initiating the amparo proceeding and in seeking, and obtaining, the resulting amparo court order.

34

Under *Harris*, this was a sufficient basis upon which to deny relief. (*Harris, supra*, 240 Cal.App.2d at p. 454.)

Accordingly, the trial court did not abuse its discretion in denying EPSA's motion to withdraw from the stipulation.

## DISPOSITION

The judgment is affirmed. Agrobiosol is entitled to its costs on appeal.


BENKE, J.

WE CONCUR:


McCONNELL, P. J.


GUERRERO, J.